[Crim. No. 18492. Second Dist., Div. Two. Dec. 1, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
TYRE LOGAN SHAW, Defendant and Appellant.

■■■■■■■■

**COUNSEL**

Richard S. Buckley, Public Defender, James L. McCormick, Charles A. Maple and Leighton A. Nugent, Deputy Public Defenders, for Defendant and Appellant.

Evelle J. Younger, Attorney-General, William E. James, Assistant Attorney General, and Lawrence P. Scherb II, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**FLEMING, J.**—The court, having heretofore affirmed the judgment of conviction for possession of marijuana for purposes of sale and for unlawfully carrying a loaded firearm in a public place, now reconsiders the judgment in the light of *Mozzetti* v. *Superior Court,* 4 Cal.3d 699 [94 Cal. Rptr. 412, 484 P.2d 84], a decision made retroactive by *Gallik* v. *Superior Court,* 5 Cal.3d 855 [97 Cal.Rptr. 693, 489 P.2d 573]. Relevant to reconsideration are the following facts:

A number of police, aided by an informant and an undercover deputy, were engaged in consummating an elaborate drug purchase transaction. During the preliminaries two men walked up to the location (an apartment building), one of whom was identified by the undercover deputy as the potential seller of narcotics while the other, herein called X, was identified by the undercover deputy as the potential source of supply for the narcotics. A few minutes later the informant and the undercover deputy reported to Officer Taranto that X had left to get the narcotics and would return with them within a half hour. X was wearing a leather jacket with a white peace symbol on it. Some time later the undercover deputy signalled that a sale had taken place, and the police undertook to spring the trap. An apartment inside the building was raided, and narcotics and narcotic paraphernalia were observed being thrown from a window of the apartment building. While the raid was taking place two men exited from a green Volkswagen in front of the apartment building, and the man on the driver's side ap-

peared to be X, since he was wearing a leather jacket with a white peace symbol. Officer Taranto detained X in front of the Volkswagen, searched him, and found on his person a concealed loaded revolver. A search of the other man disclosed $580 in currency. Officer Taranto recalled a robbery report he had read earlier which had described two suspects similar to the two men detained. He arrested them on suspicion of robbery.

A search of the green Volkswagen at the location uncovered a quantity of marijuana in a storage compartment on the ledge behind the rear seats, material which was discovered when the lid of the storage compartment was lifted. It subsequently developed that there were two X's, both wearing leather jackets with white peace symbols, and that the man who had been identified as the potential source of supply for narcotics had been arrested inside the apartment, while the man who had exited the green Volkswagen was appellant, a different person.

The issue is the propriety of the search of the Volkswagen.

■ ■ The first problem arises from the officer's testimony that his search of the Volkswagen at the scene was an inventory search. This explanation was tendered in the light of an unbroken line of 20 Court of Appeal cases dating from 1956 to 1970 upholding the propriety of such a search. In *Mozzetti* v. *Superior Court,* 4 Cal.3d 699 [94 Cal.Rptr. 412, 484 P.2d 84], such searches were disapproved. Although the search cannot be upheld for the reason given by the officer, if in fact reasonable cause for the search existed, the statement of the officer that he based his authority to search on a ground subsequently disapproved by the Supreme Court does not vitiate the validity of the search if other valid ground for the search existed.

We think the search was justified on two valid grounds:

1. The officer reasonably suspected that X was the source of supply for the narcotics and was engaged in the process of delivering narcotics for the proposed sale. Such reasonable belief would justify his arrest and the search of the Volkswagen. The fact that mistaken identity was involved did not detract from the reasonableness of the arrest.

2. After the preliminary detention of appellant Officer Taranto discovered a concealed loaded revolver on the latter's person. This justified an immediate arrest. Officer Taranto recalled the robbery report and arrested two suspects on reasonable suspicion they were wanted for robbery. Such suspicion was supported by the discovery of the concealed loaded revolver and the discovery of the $580 on the person of the other suspect. In connection with these arrests an immediate search of the vehicle

for weapons and stolen property was authorized. Such facts are similar to those in *Chambers* v. *Maroney,* 399 U.S. 42 [26 L.Ed.2d 419, 90 S.Ct. 1475], where petitioner was arrested in an automobile on suspicion of armed robbery and the subsequent search of the automobile at the police station uncovered revolvers and other evidence which, said the court, were properly used at the trial. The court said: "As the state courts correctly held, there was probable cause to arrest the occupants of the station wagon that the officers stopped; just as obviously was there probable cause to search the car for guns and stolen money." (Pp. 47-48 [26 L.Ed.2d at p. 426].)

Since we find the search valid on the foregoing grounds, we do not consider the argument of the Attorney General that because the Volkswagen had been taken without permission of its owner appellant was not entitled to raise the issue of unlawful search.

The judgment is affirmed.

**HERNDON, J.**—I concur in the reasoning of the foregoing opinion and its conclusion that the judgment should be affirmed.

There is additional authority supporting the holding that the search of the automobile was valid as an incident to appellant's unquestionably valid arrest notwithstanding the fact that the only reason expressly articulated by the officer for making the search was that he was about to impound the vehicle. It is true that the officer testified that he made the search for the stated reason, but his testimony does not indicate that he had no other valid reason. It is almost an inherent certainty that the officer had in mind appellant's suspected participation in the robbery, his illegal possession of the concealed weapon and his reasonably suspected narcotic activities when the search was made.

In *People* v. *Walker,* 273 Cal.App.2d 720 [78 Cal.Rptr. 439], as in the case at bench, the defendant was found in possession of a concealed weapon. The following from the decision in that case at page 725 is equally applicable here: "Officer Kainz decided that defendant should be arrested for robbery, and so informed him. It is unnecessary to determine whether there was probable cause to suspect defendant of robbery. His possession of the concealed weapons furnished solid ground for an immediate arrest, the legality of which is not disturbed by the officer's having in mind a more serious offense which was suggested by defendant's possession of the firearms. (See *People* v. *Woods* (1966) 239 Cal.App.2d 697, 702 [49 Cal. Rptr. 266].)

"Following a lawful arrest for a crime involving firearms it was appro-

priate to make a search of the other parts of the car for other guns and ammunition. The drugs found in the trunk, though not the object of the search, could not be overlooked and were properly seized. (*People* v. *Jackson* (1966) 241 Cal.App.2d 189 [50 Cal.Rptr. 437].)"

A similar holding was made in *People* v. *Kelley,* 3 Cal.App.3d 146, 151 [83 Cal.Rptr. 287], as follows: "Furthermore, the arrest is not invalidated by the fact that the officer told defendant he was being arrested for drunk driving. It is unnecessary to decide whether the circumstances justified an arrest for that offense, since there were grounds to arrest for two different, though related, misdemeanors. The officer's announcement of the wrong offense did not make the arrest unlawful."

If the test of the reasonableness of an arrest and of a search and seizure made as an incident thereto is an *objective* test, that is, whether or not the facts known to the officer would create in the mind of a reasonable person a strong suspicion that the arrested person was guilty of a felony, certainly the officer in this case had reasonable grounds to make the arrest and the incidental search.

In this case, even more clearly than in *Mann* v. *Superior Court,* 3 Cal. 3d 1 [88 Cal.Rptr. 380, 472 P.2d 468], it is evident that the search was incidental to a lawful arrest. In *Mann,* the officer testified affirmatively that, in making the arrests there in question, he had relied solely and exclusively upon knowledge he had gained through illegal observations previously made. But, properly applying an objective test, the Supreme Court held that subsequently, after the officer in that case had knocked on the door and had been invited into the house, "he immediately detected the odor of marijuana smoke." As the Supreme Court said, "This evidence apparent to his sense of smell, independently of what he saw through the windows, gave Lieutenant Olmos probable cause to believe that a felony was being committed in his presence and to arrest petitioners and their guests. [Citations.]"

As an independent and additional reason for affirming the judgment, I would hold that the exclusionary rule of *Mozzetti* is not applicable in this case because appellant was not the *owner* of the impounded vehicle. The testimony of appellant's girl friend is uncontradicted that appellant stole her keys and took her automobile without her knowledge or consent.

To my mind it borders upon the absurd to hold that a thief should be given the benefit of a constitutional right to an expectation of privacy to a vehicle which he has stolen. The language of *Mozzetti* lends support to the view that it is only the *owner's* property rights and rights to privacy which are entitled to protection under the Fourth Amendment.

Appellant, of course, seeks to invoke the "vicarious exclusionary rule" enunciated in *People* v. *Martin,* 45 Cal.2d 755, 759-761 [290 P.2d 855], but I would hold that this improvident rule over-extending the application of the Fourth Amendment was effectively abolished by the enactment of section 351 of the Evidence Code. I would so hold for all of the reasons so ably and so convincingly stated in *Kaplan* v. *Superior Court\** (Cal.App.) 93 Cal.Rptr. 482. As pointed out in that decision, "Neither the federal courts nor the courts of any other state employ the vicarious exclusionary rule either as a rule of evidence or as constitutionally required." It is not constitutionally required. (*Alderman* v. *United States,* 394 U.S. 165, 171-175 [22 L.Ed.2d 176, 185-188, 89 S.Ct. 961].)

It is most encouraging to observe the increasingly strong indications that the suppression doctrine and the exclusionary rule itself may be laid to rest in the not distant future. Their continued validity has come under increasing attack by legal scholars and in the United States Supreme Court where it has been aptly characterized as an "unworkable and irrational concept of law," which the "experience of over half a century has shown neither deters errant officers nor affords a remedy to the totally innocent victims of official misconduct." (See dissent by Chief Justice Burger in *Bivens* v. *Six Unknown Fed. Narcotics Agents,* 403 U.S. 388, 420 [29 L.Ed.2d 619, 640-641, 91 S.Ct. 1999].)

Even less rational would be the application of the suppression doctrine in the case at bench in which the police officers followed a procedure which a long line of California appellate court decisions had held to be not only a *proper* procedure but one which the officers' duties *required* them to pursue.

As our former opinion in this case indicates, we relied upon *People* v. *Andrews,* 6 Cal.App.3d 428, [85 Cal.Rptr. 908], a case in which the Supreme Court denied a hearing as late as June 7, 1970, *without a single vote for a hearing!* This was only one of the 19 decisions of the Court of Appeal filed during the 14-year period between 1956 and 1970 which the Supreme Court disapproved in *Mozzetti* for the stated reason that said cases provided "no persuasive rationale to justify the practices which their holdings and dicta validate."

Reversals of judgments in cases in which law enforcement officers and trials courts have faithfully and correctly followed and applied the law as it had been authoritatively declared at the time the officers acted, as

---

*A hearing was granted by the Supreme Court on May 13, 1971. The opinion of the court is reported in 6 Cal.3d 150 [98 Cal.Rptr. 649, 491 P.2d 1].

well as at the time of trial, have a stultifying effect upon the administration of justice. Such costly reversals necessarily add substantially to the burdens of our desperately overloaded trial courts and have seriously damaged the image of our judicial system in the public mind.

As Chief Justice Burger so aptly stated in his dissent in *Bivens, supra,* "It is hardly surprising that such results are viewed with incomprehension by nonlawyers in this country and lawyers, judges, and legal scholars the world over."

**ROTH, P. J.**—I dissent.

In my opinion there would have been no charge and there could have been no conviction of illegal possession of drugs for sale without the admission of the evidence illegally seized under the doctrine announced by *Mozzetti* v. *Superior Court,* 4 Cal.3d 699 [94 Cal.Rptr. 412, 484 P.2d 84], made retroactive and applicable to this case by *Gallik* v. *Superior Court,* 5 Cal.3d 855 [97 Cal.Rptr. 693, 489 P.2d 573]. The right to object to the illegally seized evidence rests ". . . on the ground that the government must not be allowed to profit by its own wrong and thus encouraged in the lawless enforcement of the law." (*People* v. *Martin,* 45 Cal.2d 755, 761 [290 P.2d 855]; *People* v. *Gonzales,* 17 Cal.App.3d 848, 853, fn. 9 [95 Cal.Rptr. 291].)

I have noted the argument of the majority that an officer's mistake in announcing the wrong offense at the moment of arrest does not vitiate an otherwise lawful arrest. However *a search, initially unlawful,* is not validated by what it turns up. At bench, the officer was asked whether ". . . when you *checked* the car subsequent to the arrest of the defendants, you were doing that to inventory it for impound purposes. . ." (italics added) to which the answer was "yes." The majority by their decision are not only converting an unlawful inventory search into a search properly incident to a lawful arrest—a kind of retroactive vindication denied the police—but in addition violate the latter and spirit of the *Mozzetti* decision in upholding a search that was unquestionably what the officer said it was: an inventory search.

In addition, I agree with the argument made by appellant that the issue of search having been litigated on the inventory impound theory, it is unfair to switch theories in an effort to uphold the judgment of the trial court. (*Reinert* v. *Superior Court,* 2 Cal.App.3d 36, 42 [82 Cal.Rptr. 263].) The appellant in the circumstances had no opportunity to cross-examine and develop a record on an issue which was not litigated below.

In our first opinion filed April 5, 1971 (pre-*Mozzetti*—*Mozzetti* was

filed April 30, 1971), we spent approximately three pages justifying the search *as an inventory search* which the officer who said it was and which *Mozzetti,* supplemented by *Gallick,* now makes illegal.

Considerations of fundamental fairness and adherence to the record at bench dictate that this court decide the propriety of the impound-inventory procedure solely on the basis of the *Mozzetti* decision, and in my opinion, the Supreme Court's order transferring this case for reconsideration requires this court to decide it on the basis of *Mozzetti.*

Appellant's petition for a hearing by the Supreme Court was denied January 26, 1972.