[Crim. No. 10041. Fourth Dist., Div. Two. Feb. 14, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL LEO MUSANTE, Defendant and Appellant.

## COUNSEL

Richard J. Weller, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Richard D. Garske, Harley D. Mayfield, Jay M. Bloom and Michael E. Lasater, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**GARDNER, P. J.**—Defendant pled guilty to burglary. Insofar as this count is concerned, he contends (1) that the trial court failed to advise

him of the direct consequences of his guilty plea, and (2) that the degree of burglary was not specifically designated although he was sentenced for first degree burglary.

■ The lack of a certificate of probable cause precludes consideration of these contentions. We agree completely with the stand taken by the court in *People* v. *Pinon* (1979) 96 Cal.App.3d 904 [158 Cal.Rptr. 425] that if Penal Code section 1237.5 is to retain any viability in the statutory scheme, appellate courts cannot engage in a wholesale disregard of its procedural requirements. Judicial economy, the usual excuse for circumventing this section, is a sorry excuse for ignoring a statute which was enacted for that very consideration.

However, just to avoid an inevitable collateral attack on the basis of inadequacy of counsel for not securing a certificate of probable cause, we would observe that the defendant's contentions insofar as the burglary charge are without merit. This was a plea bargain. The defendant was advised of the direct consequences of his guilty plea and that advisement made it clear that he was pleading guilty to first degree burglary. The advisement was that he was to receive a two-, three- or four-year state prison term. That is the penalty attached to first degree burglary. Second degree burglary is punishable by either county jail or state prison (Pen. Code, § 461). The state prison term for second degree burglary is sixteen months or two or three years (Pen. Code, § 18). Therefore, no question can arise as to the fact that defendant pled guilty to first degree burglary with the possible penalty specified. Thus, defendant's contentions if considered in spite of the failure to secure a certificate of probable cause would be held to be meritless.

The judgment of conviction of burglary will be affirmed.

At the same time the defendant pled guilty to the burglary, he pled guilty to possession of marijuana for sale after an unsuccessful motion to suppress. ■ We review the motion to suppress.

Stripped to their essentials the facts are really quite simple. Officers stopped a car which was being operated in an erratic manner. Defendant was the passenger; his wife the driver. Prompt investigation revealed that the car was stolen. Defendant and his wife were arrested. On the back seat was a large box described as an electric blanket box. This box was opened and in it was a large amount of marijuana. It is the opening of this box which is the bone of contention.

At the time of this hearing, the issue seemed fairly clear. In *People* v. *Upton* (1968) 257 Cal.App.2d 677 [65 Cal.Rptr. 103], it was held that it was reasonable for officers to search a stolen car and in so doing to open suitcases or boxes found in that car for the purpose of ascertaining ownership or whether they contained any stolen material. (See Witkin, Cal. Evidence (2d ed., 1977 supp.) § 120A.) Applying *Upton* to the facts of this case, when the officers found themselves in possession of a stolen car, it would appear reasonable for them to open the box which from its markings contained an electric blanket. It became necessary to ascertain either ownership of the blanket or whether it had been stolen.

Of course, *Upton* was decided before the current spate of footlocker/ brief case/package/closed container cases. (*United States* v. *Chadwick* (1977) 433 U.S. 1 [53 L.Ed.2d 538, 97 S.Ct. 2476]; *Arkansas* v. *Sanders* (1979) 442 U.S. 735 [61 L.Ed.2d 235, 99 S.Ct. 2586]; *People* v. *Minjares* (1979) 24 Cal.3d 410 [153 Cal.Rptr. 224, 591 P.2d 514]; *People* v. *Dalton* (1979) 24 Cal.3d 850 [157 Cal.Rptr. 497, 598 P.2d 467].) *Upton* might have had continued vitality under *Chadwick, Sanders* and *Minjares*. However, *Dalton* shot *Upton* down in flames. Under circumstances almost identical to those in the instant case, the Supreme Court held that closed boxes or containers in a stolen vehicle cannot be opened without a search warrant. Under the compulsion of *Dalton*, we reverse the conviction of possession of marijuana for sale.

Affirmed in part; reversed in part.

Kaufman, J., and McDaniel, J., concurred.

**GARDNER, P. J.,** Concurring.—*People* v. *Dalton* (1979) 24 Cal.3d 850 [157 Cal.Rptr. 497, 598 P.2d 467], which compelled a reversal in this case has a significant flaw. It is wrong.

I fully recognize that under the doctrine of stare decisis, I must follow the rulings of the Supreme Court, and if that court wishes to jump off a figurative Pali, I, lemming-like, must leap right after it. However, I reserve my First Amendment right to kick and scream on my way down to the rocks below.

I have no quarrel with the principle that the Fourth Amendment protects closed personal effects as well as persons, houses and cars. After all, it is rather specific in protecting the rights of people to be secure in their "persons, houses, papers and effects." However, I think that if the

authors of the Fourth Amendment were aware of *Dalton*, they would be turning over in their graves.

I do not accept the concept that a thief who steals my car thus wraps himself in the mantle of my Fourth Amendment rights. I do not quarrel with the concept that the Fourth Amendment protects people, not places. In our case, the lawful owner of the car would possess certain privacy rights concerning his vehicle and its contents which rights must receive the protection of the law. However, the owner possesses no personal expectation of privacy as to contraband placed in his car by others after the vehicle has been stolen. In order to apply the vicarious exclusionary rule to one in the defendant's position, it is first necessary to create a theoretical expectation of privacy in the vehicle owner as to the contraband of which he knows nothing and which found its way into his vehicle solely because the vehicle was stolen from him. I decline to accept the absurdity that the owner has any expectation of privacy in defendant's marijuana. I further contend that the thief had no expectation of privacy as to any package in the stolen vehicle.

Although *Dalton* denied that the vicarious exclusionary rule was applicable in this type of case, the court was in error. In *Dalton*, the court said at page 859: "It is contended that appellant may not contest the search of the car under the vicarious exclusionary rule because no interest of the owner of the vehicle was violated. [Citation.] Once again it should be pointed out that appellant is contesting the warrantless search of the boxes, not of the car. He never disclaimed any interest in the boxes. Thus, the search of the boxes does not involve the vicarious exclusionary rule. [Citations.]" This is pure sophistry. Conceptually, *Dalton* can't be upheld without resort to the vicarious exclusionary rule. And when that happens, the court comes slap dab up against *Solario*.

In *People* v. *Solario* (1977) 19 Cal.3d 760 [139 Cal.Rptr. 725, 566 P.2d 627], the court held that a burglar is not entitled to the protection of Penal Code section 844. It held that the vicarious exclusionary rule does not enure to the benefit of a burglar since the person whose rights were theoretically violated was the burglar's victim. The court made it clear that Penal Code section 844 offers protection to the householder, not to the burglar. As this court said in an earlier case, with perhaps a touch of hyperbole, a burglar cannot make another man's home his castle. (*People* v. *Ortiz* (1969) 276 Cal.App.2d 1, 5 [80 Cal.Rptr. 469].) Neither can a car thief make his victim's car his car for the purposes of the vicarious exclusionary rule. The concept was aptly put in the con-

curring opinion in *People* v. *Shaw* (1971) 21 Cal.App.3d 710, 715 [98 Cal.Rptr. 724], "To my mind it borders upon the absurd to hold that a thief should be given the benefit of a constitutional right to an expectation of privacy to a vehicle which he has stolen."

This is not to say that Fourth Amendment rights are available only to one who has clear title to property. That amendment protects persons without title, e.g., one with a possessory interest or anyone legitimately on the premises or where the area is one to which there was a reasonable expectation of freedom from governmental intrusion. (*Mancusi* v. *DeForte* (1968) 392 U.S. 364 [20 L.Ed.2d 1154, 88 S.Ct. 2120]; *Jones* v. *United States* (1960) 362 U.S. 257 [4 L.Ed.2d 697, 80 S.Ct. 725, 78 A.L.R.2d 233]; *United States* v. *Jeffers* (1951) 342 U.S. 48 [96 L.Ed. 59, 72 S.Ct. 93].)

The test for whether or not there has been an unreasonable governmental intrusion, of course, is whether the defendant had a reasonable expectation of privacy. (*People* v. *Edwards* (1969) 71 Cal.2d 1096, 1100 [80 Cal.Rptr. 633, 458 P.2d 713].) Aye, there is the rub. Unquestionably, a burglar has an overwhelming expectation of privacy. Actually, the entire criminal class, with the possible exception of flashers, operate entirely with a very real expectation of privacy. However, this is not a *reasonable* expectation which the courts will recognize or enforce. The criminal's right of privacy is always subject to reasonable governmental intrusion. Thus, to claim the protection of the Fourth Amendment, one must be legally and legitimately in the area about to be entered and searched. A simple example will suffice.

I was recently the victim of a burglary. A neighbor had seen the entry and, purely by accident, the police and I arrived at the same time and while the burglary was in full swing. The burglar, Billy Bell, a well known local professional, was apprehended under some bushes in the backyard. He was handcuffed and taken to the police car. The officers then returned to the bushes and in that area they found Billy's loot scattered around. But what if Billy had put his loot in a box, perhaps in a box with the label "Private property of Billy Bell, professional burglar. Keep out." Would the police have had to get a search warrant to open that box? To me the idea is downright silly. So, too, if a thief is caught in possession of a stolen car, why should he have any Fourth Amendment rights over closed containers in the car? Perhaps thieves and burglars have different standards of protection. This, of course, presents some rather prickly equal protection problems. To me the idea of

giving car thieves or burglars Fourth Amendment rights over closed containers in burgled houses or stolen cars is simply preposterous. Nevertheless, that is the result compelled by *Dalton.*

*Dalton* says that the officers were not certain that the defendant had stolen the car at the time the boxes were searched. Of course, they were not. Nevertheless, probable cause for an arrest existed. If we have to wait for convictions before officers can act, the efforts of police officers to protect the law-abiding public are going to be somewhat curtailed. When someone steals my car and I report it to the police, I think they have probable cause to arrest the driver and I don't think that a lack of a conviction has anything to do with the case. Actually, the odds are almost prohibitive that the driver is the thief. Of course, the insidious Dr. Fu Manchu might have stolen it, then, disguised as Honest John, used car salesman, sold it to the innocent driver. (To avoid a charge of racism, I will have Charley Chan arrest Dr. Fu Manchu.) But all of this has nothing to do with probable cause. When someone is driving my stolen car, I think the police have a right to arrest him and to search him and all closed containers therein. I do not want that thief to have any of my Fourth Amendment rights. Of course, if the cops open a box and find *my* stash of marijuana, I have grounds to complain. But if they open the box and find the thief's stash he has no legal right to complain. He is not legally on the premises to be searched and has no standing to complain when the police open closed containers on those premises. But then, of course, *Dalton* says he has and that, to coin a phrase, is that.

None of this is meant to indicate that a burglar or a car thief loses his Fourth Amendment rights entirely. For example, he can only be patted down for weapons or destructive evidence. The skin search comes later—during the booking process. It simply means that he can't clothe himself in my Fourth Amendment rights—which is exactly what the court did in *Dalton* although it denied doing it. I cannot see any logic in insisting on the issuance of a search warrant before the officers conduct an inventory of the contents of closed containers therein. I still think *Upton* was good law.

When, in *Cahan,* the Supreme Court of this state adopted the exclusionary rule, it made a commitment that the courts would develop "workable rules" and not indulge in "needless refinements and distinctions" nor "introduce needless confusion into the law[s] of criminal procedure." (*People* v. *Cahan* (1955) 44 Cal.2d 434, 450 [282 P.2d

905, 50 A.L.R.2d 513].) That commitment was not only commendable, it was necessary. Police officers in the field making minute to minute and second to second decisions must have rules which are definite, simple, plain, explicit and understandable. Nevertheless, as I survey the 400 to 500 cases collected in Mr. Bell's splendid Compendium on Search and Seizure, I cannot but observe that the rules which have evolved constitute a kind of encrusted ritual of rigid etiquette which is almost Byzantine in its frozen formality and labyrinthine protocol. *Dalton* simply adds, erroneously I submit, to this ever thickening layer of legalisms and adds one more barren technicality to this already bloated and amorphous field.

I don't know how many car thieves are apprehended each year, but in each case any police officer worth his salt is going to conduct an inventory to ascertain the ownership and status of the contents of the car because car thieves are notoriously catholic in their thefts. In so doing, it will be necessary to open closed containers to ascertain ownership and whether they contain stolen goods. Under *Dalton*, they will have to secure a search warrant for this task. This simply imposes on the already heavy workload of prosecutors and judges a completely unnecessary burden because I can't for the life of me imagine any judge turning down such a request. So where has anyone benefited from this "needless refinement" to the exclusionary rule?

A petition for a rehearing was denied March 11, 1980, and the opinion was modified to read as printed above. Respondent's petition for a hearing by the Supreme Court was denied April 24, 1980.