[Crim. No. 15210. Fourth Dist., Div. One. Jan. 26, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
FRANCISCO JAVIER TIRADO, Defendant and Appellant.

[Crim. No. 15556. Fourth Dist., Div. One. Jan. 26, 1984.]

In re FRANCISCO JAVIER TIRADO on Habeas Corpus.

344

## Counsel

Jeffrey J. Stuetz and Lawrence Martin Cohn for Defendant and Appellant and Petitioner.

John K. Van de Kamp, Attorney General, John W. Carney and Robert M. Foster, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**STANIFORTH, J.**—On this consolidated petition for writ of habeas corpus and appeal, defendant Francisco Javier Tirado contends his plea of guilty to robbery of a Chula Vista shoe store is void and violates due process because it was the result of presumptive as well as actual vindictive prosecution. Tirado also asserts he was rendered ineffective assistance of counsel due to his attorney's (1) failure to raise the meritorious defenses of presumptive and actual vindictive prosecution and (2) failure to seek dismissal of the robbery charges on the grounds (a) the prosecution's failure to join these charges with other robbery charges constituted a bar to Tirado's prosecution for the shoe store robbery and (b) Tirado's speedy trial rights were violated as a result of prosecutorial delay in charging him with the shoe store robbery. We find no merit in any of these claims and affirm Tirado's conviction and sentence.

### Facts

In an information filed June 24, 1982, Tirado was charged with the November 4, 1980, robbery (Pen. Code, § 211) of a Chula Vista shoe store

(CRS 58798), burglary (§ 459)[1], and two counts of assault with a deadly weapon (§ 245, subd. (a)). As to each count it was further alleged Tirado used a pistol in violation of section 12022.5. Tirado pled not guilty, denied the gun use. On July 23, 1982, pursuant to a plea bargain, Tirado entered a plea of guilty to the robbery count and admitted a weapons use allegation. The remaining charges were dismissed.

Tirado was sentenced to state prison for a five-year term, to run consecutively to the sentence Tirado was already serving in case No. CRS 57043 for the robbery of a gas station. Tirado filed a timely notice of appeal and request for certificate of probable cause on September 2, 1982. The certificate was denied September 25, 1982. A certificate of probable cause was later issued, however, on June 1, 1983.

The earlier conviction (CRS 57043) was based on a gas station robbery Tirado committed on December 28, 1981 (almost two months *after* the shoe store robbery). Tirado was captured the same day. The following day (Dec. 29, 1981) Tirado was charged with the gas station offenses—two counts of robbery (§ 211), burglary (§ 459), and two counts of assault with a deadly weapon (§ 245, subd. (a)). As to each count it was further alleged Tirado had used a pistol (§ 12022.5) and as to the robbery and burglary counts, infliction of great bodily injury was charged (§ 12022.7). On January 8, 1982, Tirado pled guilty to one count of robbery and admitted the gun use allegation; all remaining counts were dismissed pursuant to a plea bargain. The sentencing hearing followed on March 4, 1982, at which Tirado exercised his rights under sections 1170, subdivision (b), and 1204 to request the intermediate five-year term for his offense. He charges the prosecutor retaliated for making this successful mitigation argument by filing the shoe store robbery charges.

While the gas station charges were in court processes, investigation of the Chula Vista shoe store robbery continued. Fingerprints from the shoe store counter were submitted January 7, 1981, for comparison with the prints of Tirado and his two brothers. The prints were identified as those of Tirado's brother David. On January 12, 1982, Tirado was positively identified at a photographic lineup as a participant in the shoe store robbery.

Deputy District Attorney Harris M. Elias handled Tirado's prosecution for the gas station robbery. He states (in a declaration attached to the People's brief and response to petition for writ of habeas corpus) shortly before the readiness conference in the gas station robbery prosecution, he had determined to file charges against Tirado for the shoe store robbery. He held

---

[1]All statutory references are to the Penal Code unless otherwise specified.

off filing the charges, however, until the gas station robbery readiness conference. There he requested a plea to robbery with gun use allegation, which was agreed to and which carried a middle term sentence of five years, aggravated term of seven years. Elias also stated his intention to file the new charges against Tirado. The conference judge, Thomas J. Gligorea, asked if Elias would agree not to file the shoe store robbery charges if Tirado stipulated to the aggravated term of seven years for the gas station robbery. Elias agreed, and defense counsel stated he would confer with his client and communicate the final decision on the matter at or before Tirado's sentencing.

Anthony Leary, Tirado's defense counsel on the gas station robbery charges, states (in a responding declaration) the only offer made by Elias was a plea to a robbery count with enhancement. According to Leary: "At the time the plea was being negotiated and continuing until after Mr. Tirado's sentencing, I was not aware of any other major or minor charges of any nature to which my client was potentially subject."

Attorney Anthony Valladolid represented Tirado in the early stages of the shoe store robbery case. He relates (in a letter to Tirado's appellate counsel) his discussions with the district attorney's office led him to believe "that the more recent case in which I represented Mr. Tirado had been issued because they were dissatisfied with the amount of custody imposed in the preceding case." Valladolid thought the fact situation gave rise to a possible defense of vindictive prosecution but read the relevant case law as indicating that in the absence of a showing of retaliation for the exercise of a legal right, the defense would not lie. Valladolid did not view the facts as supporting Tirado's exercise of a legal right.

Laura Berend, Tirado's defense counsel on the shoe store robbery charges, declares representatives of the district attorney's office stated to her in the presence of the judge assigned to the matter (Susan P. Finlay) the additional charges were filed in part because Tirado did not receive the maximum term for the gas station robbery.[2]

I

Preliminarily, the People contend this court is precluded from considering Tirado's various contentions because his appeal is based upon a certificate of probable cause issued nine months after it was first requested. Penal Code section 1237.5 facially forecloses appeal from a judgment of

---

[2]We consider these new factual matters placed before this court only as part of and response to the habeas corpus petition.

conviction upon a plea of guilty unless the defendant has filed a sworn statement with the trial court showing reasonable constitutional, jurisdictional or other grounds going to the proceedings' legality and the trial court has executed and filed a certificate of probable cause for such appeal. California Rule of Court, rule 31(d) sets the following time limits for the execution and filing of the certificate: "Within 20 days after the defendant files his statement [of appeal from a judgment of conviction entered on a plea of guilty or nolo contendere] the trial court shall execute and file either a certificate of probable cause or an order denying such a certificate and shall forthwith notify the parties of the granting or denial of such certificate."

Here, Tirado filed his section 1237.5 statement with the trial court on September 2, 1982. A certificate of probable cause was denied by the trial court on September 25, 1982, within rule 31(d)'s 20-day window for granting or denying such certificate.[3] Some eight months later, however, on June 1, 1983, the trial court issued a certificate of probable cause on Tirado's motion.[4]

The California Rules of Court do not speak to reconsideration of a defendant's request for a certificate of probable cause. No cases have been found granting the trial court authority to belatedly issue the certificate. There is no need, however, to forge a new path in this uncharted area of law. If the late issuance resulted in an invalid certificate, we would be required to meet Tirado's incompetent counsel contentions for invalidating the plea and sentence. If this court found Tirado in effect lacks the requisite certificate, we would nonetheless, in the interest of judicial economy, look to Tirado's contentions in order "to avoid an inevitable collateral attack on the basis of inadequacy of counsel for not securing a certificate of probable cause . . . ." (*People* v. *Musante* (1980) 102 Cal.App.3d 156, 158 [162 Cal.Rptr. 158], cert. den. 449 U.S. 932 [66 L.Ed.2d 157, 101 S.Ct. 332].) Solely in the interest of judicial economy, we examine Tirado's claims of "Pope" error in V below.

## II

▮▮▮ Tirado claims his plea of guilty to the shoe store robbery is void because it stemmed from presumptive and actual vindictive prosecution,

---

[3]See California Rules of Court, rule 45(a), computation of time; Code of Civil Procedure, sections 9, 12 (Sundays, holidays and first day are to be excluded in computing filing time).

[4]The trial court's about-face appears to have been based on the declarations of Tirado's trial counsel (now a part of Tirado's habeas petition). Although the record is silent as to what Tirado presented and argued to the court, Tirado does inform us "[t]he complete facts were not known to counsel in this appellate proceeding until the filing of the request for the certificate which was granted."

citing the due process clauses of the United States and California Constitutions and *Blackledge* v. *Perry* (1974) 417 U.S. 21 [40 L.Ed.2d 628, 94 S.Ct. 2098]. Tirado charges the prosecutor filed the shoe store robbery complaint in retaliation for Tirado's exercise of his rights under Penal Code sections 1170, subdivision (b), and 1204 to file a statement in mitigation, in arguing against the prosecutor's bid to have Tirado sentenced to the maximum term for his robbery of a gas station.

■ Tirado contends the prosecutor's actions created a "presumption of vindictiveness," citing the decisions of the United States Supreme Court in *North Carolina* v. *Pearce* (1969) 395 U.S. 711 [23 L.Ed.2d 656, 89 S.Ct. 2072] and *Blackledge* v. *Perry, supra,* 417 U.S. 21 (see also *Twiggs* v. *Superior Court* (1983) 34 Cal.3d 360 [194 Cal.Rptr. 152, 667 P.2d 1165], and *Barajas* v. *Superior Court* (1983) 149 Cal.App.3d 30 [196 Cal.Rptr. 599]). In *Blackledge,* the defendant was charged in a North Carolina district court with the misdemeanor of assault with a deadly weapon. He was convicted, and given a sentence to be served after completion of the prison term he was then serving. Under North Carolina law, a defendant had an absolute right to a trial de novo in superior court. Following defendant's filing of a notice of appeal to the superior court, the prosecutor obtained a grand jury indictment, based on the same conduct, charging him with the felony of assault with a deadly weapon with intent to kill and inflict serious bodily injury. The high court held the due process clause prohibited bringing a more serious charge against defendant in response to his assertion of his statutory right to a trial de novo. (*Blackledge* v. *Perry, supra,* 417 U.S. at pp. 28-29 [40 L.Ed.2d at pp. 634-635].)

The Supreme Court reached this conclusion despite the lack of evidence the prosecution acted maliciously or in bad faith in seeking the felony charges. *The court emphasized actual retaliatory motivation need not be shown. Rather, due process dictates a defendant may not be deterred from exercising his constitutional right to attack his conviction by the possibility of prosecutorial retaliation.* (*Blackledge* v. *Perry, supra,* 417 U.S. at p. 28 [40 L.Ed.2d at p. 634].)

The California Supreme Court, in *Twiggs* v. *Superior Court, supra,* 34 Cal.3d 360, followed the *Blackledge* reasoning. The defendant had endured a trial and a mistrial due to a hung jury and was, upon remand, offered a "plea bargain" by the prosecution. Twiggs refused the offer and demanded a jury trial. The prosecutor had known of Twigg's five prior felony convictions before the first trial but only sought to allege the prior convictions after the remand and Twiggs' refusal of the plea bargain. The Supreme Court said these circumstances "strongly suggest that the prosecutor unilaterally imposed a penalty in response to the defendant's insistence on

facing a jury retrial. . . . [A] presumption of vindictiveness arose in this case . . . ." (*Twiggs, supra,* 34 Cal.3d at p. 371.)

The rationale supporting the *Blackledge-Pearce-Twiggs* rule is to reduce or eliminate the defendant's apprehension he may be subjected to unilateral retaliation or vindictive punishment for attempting to exercise his procedural rights. (*United States* v. *Ruesga-Martinez* (9th Cir. 1976) 534 F.2d 1367, 1369.) ■ To punish a person because he has done what the law plainly allows him to do is a due process violation "of the most basic sort." (*Bordenkircher* v. *Hayes* (1978) 434 U.S. 357, 363 [54 L.Ed.2d 604, 610, 98 S.Ct. 663, 668].) While an individual may be penalized for violating the law, he just as certainly may not be punished for exercising a protected statutory or constitutional right.

## III

■ The case at bench does not involve a postconviction "raise the ante" factual setting. This is not a case of acceleration of penalties upon the same set of facts or the addition of unfiled charges arising out of the same transaction or "spree."

When Tirado filed his statement in mitigation, the information charging the shoe store robbery had not been filed. The prosecution was awaiting the sentencing for the gas station offenses, hoping for a maximum sentence and thus to avoid the cost and effort of a second separate case filing.

This case, unlike the *Blackledge-Pearce-Twiggs* cases, arises from a prosecution decision to file a second separate complaint against the defendant. Unlike *Blackledge* and *Twiggs* there is no evidence before this court to support a claim of actual vindictiveness. Neither the prosecutor nor the defense ever proffered any facts, any *evidence* that the charges were brought out of vindictiveness. The charge of vindictive prosecution is not a substitute for evidence.

Lacking evidence of actual vindictiveness, does a "presumption of vindictiveness" arise in this fact context requiring reversal and remand for hearing in which the prosecution has the burden of dispelling the presumption? On this point, in *United States* v. *Goodwin* (1982) 457 U.S. 368 [73 L.Ed.2d 74, 102 S.Ct. 2485], the United States Supreme Court reasoned: "There is good reason to be cautious before adopting an inflexible presumption of prosecutorial vindictiveness in a pretrial setting. In the course of preparing a case for trial, the prosecutor may uncover additional information that suggests a basis for further prosecution or he simply may come to realize that information possessed by the State has a broader significance.

At this stage of the proceedings, the prosecutor's assessment of the proper extent of prosecution may not have crystallized. In contrast, once a trial begins—and certainly by the time a conviction has been obtained—it is much more likely that the State has discovered and assessed, all of the information against an accused and has made a determination, on the basis of that information, of the extent to which he should be prosecuted. Thus, a change in the charging decision made after an initial trial is completed is much more likely to be improperly motivated than is a pretrial decision." (*Id.*, at p. 381 [73 L.Ed.2d at p. 85, 102 S.Ct. 2493].) And the Supreme Court showed prescience, anticipating the instant fact situation, in observing: "We recognize that prosecutors may be trained to bring all legitimate charges against an individual at the outset. *Certainly, a prosecutor should not file any charge until he has investigated fully all of the circumstances surrounding a case. To presume that every case is complete at the time an initial charge is filed, however, is to presume that every prosecutor is infallible— an assumption that would ignore the practical restraints imposed by often limited prosecutorial resources.* Moreover, there are certain advantages in avoiding a rule that would compel prosecutors to attempt to place every conceivable charge against an individual on the public record from the outset. . . ." (*Id.*, at p. 382 fn. 14 [73 L.Ed.2d at p. 86]; italics added.)

The timing of the prosecution's filing here does not hint of vindictiveness. Concerning "timing" the United States Supreme Court observed: "Thus, the timing of the prosecutor's action in this case suggests that a presumption of vindictiveness is not warranted. A prosecutor should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in the prosecution. An initial decision should not freeze future conduct. As we made clear in *Bordenkircher,* the initial charges filed by a prosecutor may not reflect the extent to which an individual is legitimately subject to prosecution." (*Goodwin, supra,* at pp. 381-382 [73 L.Ed.2d at p. 86, 102 S.Ct. 2493]; fns. omitted.)

Finally, the nature of the right invoked, that of arguing for a mitigated sentence on an earlier conviction, suggests the absence of any reason-based presumption of vindictiveness: "In addition, a defendant before trial is expected to invoke procedural rights that inevitably impose some 'burden' on the prosecutor. Defense counsel routinely file pretrial motions to suppress evidence; to challenge the sufficiency and form of an indictment; to plead an affirmative defense; to request psychiatric services; to obtain access to Government files; to be tried by jury. It is unrealistic to assume that a prosecutor's probable response to such motions is to seek to penalize and to deter. The invocation of procedural rights is an integral part of the adversary process in which our criminal justice system operates." (*Ibid.*)

■ *People* v. *Farrow* (1982) 133 Cal.App.3d 147 [184 Cal.Rptr. 21] (distinguished but not overruled in *Twiggs* v. *Superior Court, supra,* 34 Cal.3d at pp. 372-373) held the *Blackledge* rule was not to be extended beyond its context of alleged retaliation for a postconviction appeal. The *Farrow* court noted the prosecution may before judgment amend the information to include additional offenses shown by the evidence at the preliminary hearing. To extend *Blackledge* to the pretrial and trial contexts would unduly hamper the legitimate exercise of prosecutorial discretion. (*People* v. *Farrow, supra,* at p. 152.)

■ The California Supreme Court, in *Twiggs,* states "Neither *Goodwin* nor *Farrow* is dispositive in the circumstances presented by this case" (*Twiggs* v. *Superior Court, supra,* 34 Cal.3d at p. 373), for in *Twiggs* "the situation is analogous to that in the postconviction context . . . ." (*Ibid.*) The facts of the instant case cannot be stretched into anything beyond a pretrial decision to file a further separate case.

*United States* v. *Mallah* (2d Cir. 1974) 503 F.2d 971 (cert. den. 420 U.S. 995 [43 L.Ed.2d 671, 95 S.Ct. 1425]), which was decided before *Blackledge* although under Second Circuit authority, suggests this further distinction and reason for denying Tirado's claim of vindictive prosecution. In determining whether the prosecution's decision to indict a defendant for heroin possession after the defendant successfully set aside his conviction for cocaine possession amounted to vindictive prosecution, the *Mallah* court said: "It is one thing to increase a charge from manslaughter to murder, and quite another to charge a defendant, subsequent to a successful appeal, with a second murder. In the words of *Williams* [*United States* ex rel. *Williams* v. *McMann* (2d Cir. 1970) 436 F.2d 103, cert. den. 402 U.S. 914 (91 S.Ct. 1396)], '*Pearce* [which held that one who had won a reversal of a criminal conviction could be sentenced after retrial and conviction to a stiffer sentence than was meted out in the first trial only if the reasons for the imposition of a stiffer sentence affirmatively appeared in the record and were based on objective information concerning the defendant's identifiable conduct after the original sentencing proceeding] would have application, if a prosecutor . . . charged a defendant whose first conviction had been set aside, with a more serious offense *based upon the same conduct.*' 436 F.2d at 105 (emphasis added). Here, *the heroin counts are based upon acts which are distinct from charges previously brought against appellant. The government's decision to prosecute appellant for counts two and six is well within the traditionally broad ambit of prosecutorial discretion.*" (*Mallah, supra,* 503 F.2d at p. 988; italics added.) ■ Prosecutorial discretion in determining what charges and when to file against a defendant is basic to the framework of the California criminal justice system. (See *People* v. *Andrade* (1978) 86 Cal.App.3d 963 [150 Cal.Rptr. 662]; *People* v. *Adams*

(1974) 43 Cal.App.3d 697 [117 Cal.Rptr. 905]; Gov. Code, § 26501.) We refuse, absent logic, reason or higher judicial authority, to extend *Blackledge,* under the facts of this case, to interfere with the prosecutor's wide discretion in timing the filing of charges against a defendant for crimes arising out of distinct criminal activity. To do so would unconstitutionally interfere with the executive branch, charged with insuring that the laws of this state in the prosecution of offenses be faithfully executed. (Cal. Const., art. III, § 3; *Younger* v. *Superior Court* (1978) 21 Cal.3d 102 [145 Cal.Rptr. 674, 577 P.2d 1014]; *United States* v. *Cox* (5th Cir. 1965) 342 F.2d 167, cert. den. *Cox* v. *Hauberg* (1965) 381 U.S. 935 [14 L.Ed.2d 700, 85 S.Ct. 1767].)

■ For each of the foregoing reasons, there was no violation of due process, Tirado's claim of vindictive prosecution is without merit.

The indictment of which Tirado complains arose out of separate, distinct criminal acts which took place almost two months before the criminal activity for which Tirado was initially indicted. Assuming arguendo Tirado's argument for mitigation of sentence in the gas station robbery was an exercise of a statutory right necessary to the proof of a vindictive prosecution, the *Blackledge* rule's concern for the chilling effect on defendant's exercise of important procedural rights does not come into play here. *Blackledge* stands for the proposition the defendant is entitled to be free of apprehension the state might subject him to an increased potential punishment if he exercises his right to make a direct or collateral attack on his conviction. Here, Tirado offers no fact basis showing he had a right to be free of apprehension the state might subject him to an increased potential punishment by filing charges against him for another robbery because he requested a lesser sentence on a distinct and separate robbery conviction. No connection was found between the two sets of crimes with which Tirado was charged. They were not part of the same act or a course of conduct. This is not a *Kellett* (*Kellett* v. *Superior Court* (1966) 63 Cal.2d 822 [48 Cal.Rptr. 366, 409 P.2d 206]) fact situation. (See IV *infra.*) The prosecution could have sought Tirado's indictment for either robbery at any time before the statute of limitations had run, subject only to the due process constraint requiring the statute of limitations not be invoked to curtail the self-executing constitutional guaranty of the right to a speedy trial. (*Jones* v. *Superior Court* (1970) 3 Cal.3d 734, 739 [91 Cal.Rptr. 578, 478 P.2d 10].)

IV

■ Tirado asserts the prosecutor's *failure of joinder,* to consolidate these charges with the then pending gas station robbery information constituted a bar to Tirado's prosecution for the shoe store robbery. ■ In

support of his contention, Tirado cites Penal Code sections 654 and 954 and the *Kellett* rule that joinder of *related* offenses in a single prosecution when the prosecution is aware of both offenses is required unless joinder is prohibited or severance is permitted for good cause. (*Kellet v. Superior Court, supra,* 63 Cal.2d at p. 827.) Failure of joinder absent the above circumstances is a bar to subsequent prosecution.

The two sets of offenses which Tirado claims should have been joined are not *related* offenses. Different stores were robbed, with different accomplices. The offenses were some two months apart. The eyewitnesses were not identical for the two robberies and physical evidence was different. The *Kellett* rule, while seeking to prevent harassment of defendants, was bottomed in large part on a concern for avoiding needless repetition of evidence, and for conserving the resources and time of both the state and the defendant. Such concerns are inapplicable here.

Tirado charges the prosecution with *failure to consolidate* the two separate charges. Section 954 permits consolidation of two or more accusatory pleadings charging the same class of crime. This test was met here. However, these crimes are not related crimes requiring compulsory joinder under the *Kellett* rules. Here consolidation would rest in the sound discretion of the trial judge, had consolidation under section 954 been sought. How a People's motion to consolidate would have been received by the court or the defense is problematic, not here foreseeable. While permissible, due process required neither consolidation nor joinder here.

## V

On his habeas corpus petition, Tirado claims he was rendered ineffective assistance of counsel due to his trial attorney's failure to raise defenses of presumptive and actual vindictive prosecution. *People v. Pope* (1979) 23 Cal.3d 412, 425 [152 Cal.Rptr. 732, 590 P.2d 859, 2 A.L.R. 4th 1], holds to prevail on a claim of inadequate trial assistance, a defendant must demonstrate, inter alia, that counsel's acts or omissions "resulted in the withdrawal of a potentially meritorious defense." Our determination vindictive prosecution rules are not applicable to the facts of this case demonstrates Tirado was not harmed by his trial counsel's failure to raise the vindictive prosecution defense below.

Tirado also charges his counsel with ineffective assistance in not raising the defense of unconstitutional delay in the filing of a complaint against Tirado on the shoe store robbery. The rule of *Scherling v. Superior Court* (1978) 22 Cal.3d 493 [149 Cal.Rptr. 597, 585 P.2d 219], disposes of the contention. "[D]ue process is the appropriate test to be

applied to a delay occurring after a crime is committed but before a formal complaint is filed or the defendant is arrested. . . . [T]he test is . . . any prejudice to the defendant resulting from the delay must be weighed against justification for the delay." (*Id.*, at p. 505; fn. omitted.)

By January 12, 1982, the prosecution had actual knowledge Tirado was involved in the shoe store robbery. Fingerprints found on the shoe store counter had been positively identified as those of Tirado's brother David, whom police had earlier suspected as Tirado's accomplice in the crime, and Tirado had been positively identified by photographic lineup as one of the robbers. Tirado was not formally charged with the crime until June 24, 1982. Tirado, however, points to no prejudice resulting from this five-month, twelve-day delay in charging him with the second robbery.

Tirado asserts trial counsel's raising a speedy trial defense "could have bolstered the vindictive prosecution defense." In II and III, *supra,* this claimed error was found to be without merit. A lack of speedy trial defense would not be relevant to the grounds upon which this claim was rejected. Tirado speculates when he argues: "If charged in January, February or even in the first few days of March before the March 4 sentencing hearing [on the gas station robbery conviction], appellant could have requested consolidation for purposes of sentencing. If the two robberies had been prosecuted jointly, or were prosecuted within the same month, appellant pursuant to any guilty plea bargain would have had the right to be sentenced by the same judge on both cases. (See *People* v. *Arbuckle* (1978) 22 Cal.3d 749.) He would have had the opportunity to have that one judge exercise discretion to sentence him to serve concurrent sentences. (Pen. Code, § 669.)"[5]

Tirado has not demonstrated any reasonable likelihood of concurrent sentencing on his offenses had the second set of charges been brought early on; he cannot do so. A sentencing decision for offenses such as these is inherently unpredictable. It is based on a myriad of factors including the totally subjective judge-made appraisals of the significant weights to be attached to the various factors that must under the appropriate statutes be considered

---

[5]Arbuckle does not bestow a right to be sentenced by the same judge if two distinctive cases against the defendant had been successfully prosecuted within the same month. Arbuckle holds when a judge accepts a plea bargain and retains discretion to sentence under the bargain, an implied term of the bargain is that that judge will impose sentence. The defendant is therefore entitled to sentencing by that judge. If internal court administrative practices make that not possible, defendant may withdraw his plea. Even if Arbuckle stood for the cited proposition, such holding would not alter the decision here. It is sheer speculation to say a single judge sentencing on both sets of offenses would be more likely to impose concurrent sentences than would a judge faced with a defendant already sentenced to one set of robbery charges, who must now determine the defendant's sentence on a second set of offenses—and decide whether it is to run consecutively or concurrently.

and balanced on a case-by-case basis. Because Tirado has not demonstrated prejudice by the delay, we need not determine whether the delay was justified. There is no showing the delay in prosecution was for the purpose of weakening the defense. (See *Scherling, supra,* 22 Cal.3d at pp. 506-507.) Tirado's trial counsel did not render ineffective assistance in failing to move for dismissal of the CRS 58798 charges on the ground of denial of a due process right to a speedy trial.

## Disposition

Judgment is affirmed and petition for writ of habeas corpus is denied.

Cologne, Acting P. J., and Butler, J., concurred.

Appellant's petitions for a hearing by the Supreme Court were denied March 22, 1984.