Filed 3/9/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>   Plaintiff and Respondent,<br><br>v.<br><br>JOSE ARREGUIN,<br><br>   Defendant and Appellant. | 2d Crim. No. B304838<br>(Super. Ct. No. CR31011)<br>(Ventura County) |

Jose Arreguin appeals an order denying his petition for resentencing pursuant to former Penal Code section 1170.95 (renumbered section 1172.6 without substantive change).[1] We reverse the order and remand for an evidentiary hearing pursuant to section 1172.6. (*People v. Strong* (2022) 13 Cal.5th 698, 717-718 [true finding on a felony-murder special circumstance allegation rendered prior to *People v. Clark* (2016) 63 Cal.4th 522 and *People v. Banks* (2015) 61 Cal.4th 788 does

---

[1] All statutory references are to the Penal Code.

not preclude a petitioner from showing eligibility for section 1172.6 relief].)

We are sympathetic to the views expressed by our colleague Justice Yegan in his well-reasoned concurring opinion. *Strong,* however, does not appear to permit a harmless error application.

*FACTUAL AND PROCEDURAL HISTORY*

Arreguin's resentencing petition concerned his 1993 conviction of first degree murder (count 1) and attempted robbery (count 2), with findings of a special circumstance murder committed during an attempted robbery and a principal armed with a firearm. (§§ 187, subd. (a), 189, 664, 211, 190.2, subd. (a)(17)(A), 12022, subd. (a)(1).) The trial court sentenced Arreguin for the murder conviction to life without the possibility of parole, plus one year for the firearm enhancement. Arreguin appealed. We rejected arguments of instructional error and insufficiency of the evidence and affirmed. (*People v. Arreguin* (Dec. 12, 1994, B077312) [nonpub. opn.].)

On September 20, 2019, Arreguin filed a section 1172.6 petition for resentencing alleging that his murder conviction rested upon the felony murder or the natural and probable consequences doctrines. The trial court appointed counsel for Arreguin and permitted the parties to file written arguments regarding resentencing. Following briefing, the court denied the petition. In a thorough and thoughtful ruling, the court decided that Arreguin was ineligible for resentencing as a major participant in the crime who acted with reckless indifference to human life. (§ 189, subd. (e)(3).) The court did not issue an order to show cause or hold an evidentiary hearing prior to ruling.

*Summary of Trial Evidence*

On December 1, 1992, landlord Richard Schell was seated in his parked truck in Port Hueneme with the day's rent collections in cash and money orders. Gilbert Martinez approached the driver's side window holding a .45 caliber handgun and tapped on the window. David Soto then approached the closed passenger side window. Arreguin stood closely behind Martinez holding Martinez's jacket. George Pena sat behind the wheel of a getaway vehicle. The four men had followed Schell to the location after abandoning an earlier effort to rob him following his rent collection from Pena's sister.

Soto then struck and broke the vehicle window. Schell started the truck in an effort to escape. Martinez made a statement, then shot Schell in the heart, killing him. Immediately preceding the fatal shot, Arreguin exhorted, "Shoot 'im, shoot 'im." The men then fled. Later that evening, Arreguin admitted to Pena's uncle that he urged Martinez to shoot Schell.

At trial, Arreguin claimed he was merely a passenger in the getaway vehicle who was unaware that the other men were planning a robbery or possessed a firearm. He also denied making the statement, "Shoot 'im, shoot 'im," to Pena's uncle.

Arreguin appeals the resentencing order and has submitted supplemental briefing discussing *People v. Strong*, *supra*, 13 Cal.5th 698.

*DISCUSSION*

Arreguin argues that the trial court erred by denying his resentencing petition because he demonstrated prima facie eligibility for relief (issuance of an order to show cause and an evidentiary hearing) pursuant to section 1172.6. He points out that his felony murder special circumstance conviction does not

3

necessarily render him ineligible for relief. (*People v. Strong*, *supra*, 13 Cal.5th 698 at p. 720 [special circumstance finding prior to *People v. Banks*, *supra*, 61 Cal.4th 788, and *People v. Clark*, *supra*, 63 Cal.4th 522 does not warrant summary denial of a section 1172.6 petition, instead, the matter must proceed to an evidentiary hearing].)

Section 1172.6 authorizes a defendant "convicted of felony murder or murder under the natural and probable consequences doctrine" to challenge his murder conviction if, as a threshold matter, he makes a "prima facie showing" of entitlement to relief. (§ 1172.6, subds. (a) & (c).) This, in turn, requires a showing that, among other things, he "could not presently be convicted of murder" under the amendments to the murder statutes that became effective on January 1, 2019. (*Id.* subd. (a)(3).) These statutes, even as amended, still authorize a murder conviction, however, based on murder committed by someone else in the course of a jointly committed felony as long as the defendant "was a major participant in the underlying felony and acted with reckless indifference to human life." (§ 189, subd. (e)(3).)

*People v. Strong*, *supra*, 13 Cal.5th 698, is controlling. *Strong* concluded that "[f]indings issued by a jury before *Banks* and *Clark*" are not preclusive and "do not preclude a defendant from making out a prima facie case for relief." (*Id.* at pp. 710, 716-717.) *Strong* reasoned that *Banks* and *Clark* "substantially clarified" and narrowed the terms "major participant" and "reckless indifference." (*Id.* at p. 721.) Thus, the *Banks* and *Clark* holdings represent a significant change warranting reexamination of earlier litigated issues. (*Id.* at p. 717.) Moreover, *Strong* held that it is inappropriate for any court to evaluate whether substantial evidence supports the jury's pre-

4

*Banks* and pre-*Clark* finding if the evidence is viewed through the narrowed *Banks* and *Clark* prisms. (*Id.* at pp. 719-720.) In sum, *Strong* held that a pre-*Banks* and pre-*Clark* special circumstance finding does not warrant summary denial of a section 1172.6 petition. Instead, the matter must proceed to an evidentiary hearing. (*Id.* at p. 720.)

Here, Arreguin's special circumstance finding was made prior to *Banks* and *Clark*. Arreguin is entitled to an evidentiary hearing. However the trial court may rule after an evidentiary hearing, we hope our Supreme Court will offer guidance on whether requests for section 1172.6 evidentiary hearings in felony murder convictions prior to *Banks* and *Clark* are ever subject to a harmless error analysis.

*DISPOSITION*

The order denying the petition for resentencing is reversed, and the matter is remanded to the trial court to appoint counsel, issue an order to show cause, and conduct an evidentiary hearing pursuant to section 1172.6.

<u>CERTIFIED FOR PUBLICATION.</u>

GILBERT, P. J.

I concur:

BALTODANO, J.

5

YEGAN, J., Concurring.

I concur under compulsion of *People v. Strong* (2022) 13 Cal.5th 698 (*Strong*). The Court of Appeal is bound to apply the holdings of the California Supreme Court. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 457.) This is a reversal only because we view *Strong, supra*, in isolation. I do not believe we should view this precedent in isolation. As Presiding Justice Gardner would say, I reserve my right First Amendment right to express disagreement. (*People v. Musante* (l980) 102 Cal.App.3d 156, 159, conc. opn. of Gardner, P.J. ["I fully recognize that under the doctrine of stare decisis, I must follow the rulings of the Supreme Court, and if that court wishes to jump off of a figurative Pali, I, lemming-like, must leap right after it. However, I reserve my First Amendment right to kick and scream on my way down to the rocks below"]; see also Witkin, Manual on Appellate Court Opinions (1977) at pp. 168-169 [just because the Court of Appeal is bound does not mean it is gagged].)

Respectfully, there is another way to discharge our duty at the California Court of Appeal. That is to say, the California Constitution admonishes us to not reverse an order unless there is a miscarriage of justice. (Cal. Const., Art. VI, § 13.) There is no miscarriage of justice here. There is a procedural error only. It does not matter that appellant "checked the box" stating he could not presently be convicted of murder. This statement is false. And because appellant falsely checked this box, a new round of litigation has followed. This is a poor idea stemming from the declared false premise.

Any person who participates in an uncharged conspiracy to commit armed robbery, who is present at the time of the murder,

and who tells his co-conspirator to shoot the victim with a .45 caliber pistol is, as a matter of law, a "major participant" acting with "reckless indifference." There is no other way to view this evidence. In denying the motion, the trial court was aware that appellant denied telling his cohort to shoot, denied confessing to his uncle, and claimed that he was an innocent passenger in the robbery get-away car. Had the trial court entertained some doubt concerning this factual explanation, I would like to think that it would have ordered an evidentiary hearing and/or issued an order to show cause. It did not do so. Appellant made no offer of proof as to what further evidence the trial court could consider to obtain relief from the LWOP sentence. Now, we order such a hearing. In my opinion, the superior court has better things to do. Based upon the present record, the motion will fail. And there will be yet another appeal. Somewhere along the line, litigation should cease.

Years ago, I predicted that the courts would be deluged with resentencing requests and resentencing appeals. I was correct. The Legislature and the Governor did not truly consider the judicial impact of the retroactive sea changes in the murder sentencing laws. Our criminal courts were, and are, already over-burdened and no additional resources were given to the judiciary to effect these radical changes in the law. The new laws impact thousands of persons convicted of murder long ago and serving, at a minimum, fifteen years to life. The Superior Court and the Court of Appeal are now spending an inordinate amount of time and resources as a result of these changes. This is to the detriment of other appeals from recent judgments.

Nowhere in the *Strong* opinion is there any mention of the California Constitution and the familiar harmless error analysis.

Here, there was "*Strong*" error.  First, there is no automatic denial of relief for pre-*People v. Banks* (2015) 61 Cal.4th 788 and pre-*People v. Clark* (2016) 63 Cal.4th 522 trial court "special circumstances" determinations.  Second, the petitioner may have an evidentiary hearing where there is no conclusive proof that he is not ineligible for relief. (*Strong, supra,* 13 Cal.5th at pp. 708-709.)  But we can apply the holding of *Strong*, and still review the error pursuant to the California Constitution.  It must be observed that the California Constitution is not suspended for resentencing statutes.  Perhaps the Supreme Court considered and impliedly rejected the harmless error analysis in the *Strong* opinion.  We do not know.  In my opinion, review should be granted and the Supreme Court should declare that a "harmless error" analysis has application in the presenting context.

<u>CERTIFIED FOR PUBLICATION.</u>

YEGAN, J.

Patricia M. Murphy, Judge

Superior Court County of Ventura

_____

Diane E. Berley, under appointment by the Court of
Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief
Assistant Attorney General, Susan Sullivan Pithey, Assistant
Attorney General, David E. Madeo and Amanda V. Lopez, Deputy
Attorneys General, for Plaintiff and Respondent.