[Crim. No. 13471. Fourth Dist., Div. One. Mar. 21, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
EMMANUEL LUCIOUS, Defendant and Appellant.

**[Opinion certified for partial publication.[1]]**

[1]Certified for publication with the exception of sections I, II, III, IV, VI, and VII.

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Paul Bell, Deputy State Public Defender, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, John W. Carney and Yvonne H. Behart, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**STANIFORTH, J.**—Defendant Emmanuel Lucious appeals jury convictions of assault with intent to commit rape, attempted robbery and second degree burglary in case No. CR 53996 (Kennedy School offenses) and convictions of rape, burglary and robbery in consolidated case No. CR 53630 (Valencia Park School offenses). The jury found Lucious did not personally use a firearm in any of the offenses. Lucious admitted two prior felony convictions. The trial court denied probation and sentenced Lucious for the Kennedy School offenses to the upper term of six years for the assault with intent to commit rape, eight months (one-third the minimum) term consecutively for attempted robbery and the upper term of three years concurrent for burglary but stayed the burglary sentence pursuant to Penal Code section 654. For the Valencia Park School offenses the court sentenced Lucious to one year (one-third of the midterm) consecutive on the robbery; three years upper term concurrent on the burglary but stayed the sentence (§ 654); and eight years consecutively (upper term) on the rape (§ 667.6, subd. (c)). The court imposed a five-year enhancement for a prior conviction of rape (§ 667.6, subd. (a)), for a total sentence of twenty years, eight months to be served concurrently with a parole revocation term he was then serving. No credit was given for time served.

FACTS

KENNEDY SCHOOL OFFENSES

The first victim was a sixth-grade teacher at Kennedy Elementary School. Shortly before 3 p.m. on February 10, 1981, she was working in her classroom when a man she later identified as Lucious came into the room and said "Hi. Do you remember Sharon? I'm her brother." The assailant put his hand over her mouth and told her not to scream. He forced her to the floor and sat on top of her ribs. He told her to be quiet. When she was not, he hit her on the face and shoved her head down to the floor. He said

"Relax, don't make any noise. All I want is your money. I'm not going to hurt you." He asked where the money was and she told him in the long closet but he did not go to the closet. Instead he asked her to kiss him and said he wanted "some pussy." When she turned away he put his hand in his pocket and claimed to have a gun. He put his hands on her breasts and again asked for a kiss and she struggled to pull his hand off. At this point another teacher, Elaine Kaplan, came into the room and saw the assault in process. The attacker arose and walked out of the room at a normal pace. Once outside, he ran away yelling "I didn't do nothing."

### VALENCIA PARK SCHOOL OFFENSES

On that same day, February 10, 1981, the second victim was a teacher at Valencia Park Elementary School, a school about one and one-half miles from the Kennedy Elementary School. At sometime after 3:20 p.m. she was in her classroom. An adult black male whom she later identified as Lucious came into the room. He asked her when school let out. She answered him and asked if she could help him find someone. He replied "I'm looking for Sharon Baker" and said "I'm her brother." After a discussion about what grade she was in and confusing room numbers, the teacher turned her back and started writing on the blackboard. At this point Lucious rushed her and grabbed her hair. He covered her nose and mouth with his hand and threw her to the floor. She landed on her knees facing down and Lucious straddled her. He threatened to kill her. She tried to scream but became convinced he would kill her if she was not quiet.

He asked for her money and she said it was in the cabinet in the back and he told her to crawl to the back of the room. He remained on top of her during the lengthy crawl. When they finally arrived at the back of the room she obeyed his order to get her purse and take the money out. He again yelled at her and they wrestled. She screamed and kept screaming and Lucious got very angry. He pushed his hand into her nose, pushing her down and choking her. She went limp and he let go. He told her to roll over, take off her clothes, saying he wanted "some of that sweet pussy." He then saw the picture of her children and threatened to kill them if she did not cooperate. She agreed to submit and took her pants down. He could not accomplish the act himself and ordered her to help him. The sex act had progressed for about four minutes when the victim heard someone outside and yelled for help.

Teacher Stephanie Mahan came into the room and saw them. Without interrupting the sex act Lucious said "It's all right. I'm her husband." Mahan left the room to get help. Lucious completed the intercourse, pulled up his pants and fled across the playground in the direction of his residence.

Lucious claimed he was not the perpetrator of either of these crimes. The prosecution introduced evidence on the issue of identity of a 1977 felony attempted rape conviction.[2]

## DISCUSSION

### I—IV*

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

### V

Lucious' supplemental brief (written in Lucious' own hand) asserts the Kennedy School charges should be dismissed under the doctrine of *Blackledge* v. *Perry* (1974) 417 U.S. 21 [40 L.Ed.2d 628, 94 S.Ct. 2098], and *United States* v. *Groves* (9th Cir. 1978) 571 F.2d 450, 453. He asserts the district attorney's refusal to grant discovery concerning "the Kennedy School affair" until ordered by the court to do so gives rise to a "vindictive prosecution"—the filing of the "Kennedy School" charges. This assertion is totally without merit.

Lucious contends the prosecutor's actions created a "presumption of vindictiveness," citing the decisions of the United States Supreme Court in *North Carolina* v. *Pearce* (1969) 395 U.S. 711 [23 L.Ed.2d 656, 89 S.Ct. 2072] and *Blackledge* v. *Perry, supra,* 417 U.S. 21 (see also *Twiggs* v. *Superior Court* (1983) 34 Cal.3d 360 [194 Cal.Rptr. 152, 667 P.2d 1165], and *Barajas* v. *Superior Court* (1983) 149 Cal.App.3d 30 [196 Cal.Rptr. 599]). In *Blackledge,* the defendant was charged in a North Carolina district court with the misdemeanor of assault with a deadly weapon. Defendant was convicted and given a sentence to be served after completion of the prison term he was then serving. Under North Carolina law, a defendant had an absolute right to a trial de novo in superior court. Following defendant's filing of a notice of appeal to the superior court, the prosecutor obtained a grand jury indictment, based on the same conduct, charging

---

[2]In September 1977 Shirley G., a kindergarten teacher at Kennedy Elementary School was in her classroom when Lucious appeared at her door and offered to help her set up her classroom. After some conversation about what he could do, he jumped on her and forced her to the floor. He straddled her and started beating her about the face with his fists. She screamed and he told her to shut up but she continued to scream and he kept telling her to shut up. She struggled to free herself. He started to strangle her but she jambed her fist down his throat. Lucious got up and ran.

*See footnote 1, *ante,* page 416.

defendant with the felony of assault with a deadly weapon with intent to kill and inflict serious bodily injury. The high court held the due process clause prohibited bringing a more serious charge against defendant in response to his assertion of his statutory right to a trial de novo. (*Blackledge* v. *Perry, supra,* 417 U.S. at pp. 28-29 [40 L.Ed.2d at p. 635].)

The Supreme Court reached this conclusion despite the lack of evidence the prosecution acted maliciously or in bad faith in seeking the felony charges. *The court emphasized that actual retaliatory motivation need not be shown.* ■ *Rather, due process dictates that a defendant may not be deterred from exercising his constitutional right to attack his conviction by the possibility of prosecutorial retaliation.* (*Blackledge* v. *Perry, supra,* 417 U.S. at p. 28 [40 L.Ed.2d at pp. 634-635].)

The California Supreme Court in *Twiggs* v. *Superior Court, supra,* 34 Cal.3d 360, followed the *Blackledge* reasoning. Twiggs had endured a trial and a mistrial due to a hung jury and was, upon remand, offered a "plea bargain" by the prosecution. Twiggs refused the offer and demanded a jury trial. The prosecutor had known of Twiggs' five prior felony convictions before the first trial but sought to allege the prior convictions only *after* the remand and Twiggs' refusal of the plea bargain. The Supreme Court said these circumstances "strongly suggest that the prosecutor unilaterally imposed a penalty in response to the defendant's insistence on facing a jury retrial. . . . [A] presumption of vindictiveness arose in this case . . . ." (*Id.,* at p. 371.)

■ The rationale supporting the *Blackledge-Pearce-Twiggs* rule is to reduce or eliminate the defendant's apprehension he may be subjected to retaliation or vindictive punishment for attempting to exercise his procedural rights. (*United States* v. *Ruesga-Martinez* (9th Cir. 1976) 534 F.2d 1367, 1369.) To punish a person because he has done what the law plainly allows him to do is a due process violation "of the most basic sort." (*Bordenkircher* v. *Hayes* (1978) 434 U.S. 357, 363 [54 L.Ed.2d 604, 610, 98 S.Ct. 663, 668].) While an individual may be penalized for violating the law, he just as certainly may not be punished for exercising a protected statutory or constitutional right.

This is not a postconviction "raise the ante" factual setting. This is not a case of acceleration of penalties upon the same set of facts or the addition of unfiled charges arising out of the same transaction or "spree." Nor is this a question of prosecutorial vindictiveness in the context of plea negotiations. (See *Bordenkircher* v. *Hayes, supra,* 434 U.S. 357, 360 [54 L.Ed.2d 604, 608-609].)

■ When Lucious sought discovery, the Kennedy School rape was still under investigation. When the prosecutor was satisfied he had sufficient proof of Lucious' guilt, he immediately filed a second separate complaint. These facts bring this case within the rule of *United States* v. *Goodwin* (1982) 457 U.S. 368 [73 L.Ed.2d 74, 102 S.Ct. 2485], where the court limited the *Blackledge* rule to the postconviction appeal-reversal context. (See also *People* v. *Farrow* (1982) 133 Cal.App.3d 147, 152 [184 Cal.Rptr. 21].)

This case, unlike the *Blackledge-Pearce-Twiggs* cases, arises from a pretrial decision to file a second complaint against the defendant. Unlike *Blackledge-Twiggs,* there is no evidence before this court to support a claim of actual vindictiveness. Neither the prosecutor nor the defense ever proffered any *evidence* the charges were brought for this purpose.

Lacking evidence of actual vindictiveness, does a "presumption of vindictiveness" arise in this fact context requiring reversal and remand for hearing where the prosecution has the burden of dispelling the presumption? On this point in *United States* v. *Goodwin, supra,* 457 U.S. 368, the United States Supreme Court reasoned: "There is good reason to be cautious before adopting an inflexible presumption of prosecutorial vindictiveness in a pretrial setting. In the course of preparing a case for trial, the prosecutor may uncover additional information that suggests a basis for further prosecution or he simply may come to realize that information possessed by the State has a broader significance. At this stage of the proceedings, the prosecutor's assessment of the proper extent of prosecution may not have crystallized. In contrast, once a trial begins—and certainly by the time a conviction has been obtained—it is much more likely that the State has discovered and assessed all of the information against an accused and has made a determination, on the basis of that information, of the extent to which he should be prosecuted. Thus, a change in the charging decision made after an initial trial is completed is much more likely to be improperly motivated than is a pretrial decision." (*Id.,* at p. 381 [73 L.Ed.2d at p. 85].) And the Supreme Court showed prescience, anticipating this case when it observed: "We recognize that prosecutors may be trained to bring all legitimate charges against an individual at the outset. *Certainly, a prosecutor should not file any charge until he has investigated fully all of the circumstances surrounding a case. To presume that every case is complete at the time an initial charge is filed, however, is to presume that every prosecutor is infallible— an assumption that would ignore the practical restraints imposed by often limited prosecutorial resources.* Moreover, there are certain advantages in avoiding a rule that would compel prosecutors to attempt to place every conceivable charge against an individual on the public record from the outset." (*Id.,* at p. 382, fn. 14 [73 L.Ed.2d at p. 86]; italics added.)

Finally, the nature of the right invoked may suggest the absence of any reason-based presumption of vindictiveness: "In addition, a defendant before trial is expected to invoke procedural rights that inevitably impose some 'burden' on the prosecutor. Defense counsel routinely file pretrial motions to suppress evidence; to challenge the sufficiency and form of an indictment; to plead an affirmative defense; to request psychiatric services; to obtain access to Government files; to be tried by jury. It is unrealistic to assume that a prosecutor's probable response to such motions is to seek to penalize and to deter. The invocation of procedural rights is an integral part of the adversary process in which our criminal justice system operates." (*Id.*, at p. 381 [73 L.Ed.2d at pp. 85-86].)

Nor does the timing of the prosecution's filing here hint of vindictiveness. Concerning "timing" *Goodwin* observed: "Thus, the timing of the prosecutor's action in this case suggests that a presumption of vindictiveness is not warranted. A prosecutor should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in the prosecution. An initial decision should not freeze future conduct. As we made clear in *Bordenkircher,* the initial charges filed by a prosecutor may not reflect the extent to which an individual is legitimately subject to prosecution." (*Id.*, at pp. 381-382 [73 L.Ed.2d at p. 86]; fns. omitted.)

*People* v. *Farrow, supra,* 133 Cal.App.3d 147 (distinguished but not overruled in *Twiggs* v. *Superior Court, supra,* 34 Cal.3d at pp. 372-373) held the *Blackledge* rule was not to be extended beyond its context of alleged retaliation for a postconviction appeal. The *Farrow* court noted the prosecution may before judgment amend the information to include additional offenses shown by the evidence at the preliminary hearing. To extend *Blackledge* to the pretrial and trial contexts would unduly hamper the legitimate exercise of prosecutorial discretion. (*People* v. *Farrow, supra,* 133 Cal.App.3d at p. 152.)

The California Supreme Court in *Twiggs, supra,* 34 Cal.3d 360, states "Neither *Goodwin* nor *Farrow* is dispositive in the circumstances presented by this case," for in Twiggs "the situation is analogous to that in the postconviction context . . . ." (34 Cal.3d at p. 373.) The facts of this case cannot be stretched into anything beyond a pretrial decision to file a further separate case.

*United States* v. *Mallah* (2d Cir. 1974) 503 F.2d 971 (cert. den. 420 U.S. 995 [43 L.Ed.2d 671, 95 S.Ct. 1425]) (decided before *Blackledge* although

under Second Circuit authority) suggests this further distinction and reason for denying the claim of vindictive prosecution. In determining whether the prosecution's decision to indict a defendant for heroin possession after the defendant successfully set aside his conviction for cocaine possession amounted to vindictive prosecution, the *Mallah* court said: "It is one thing to increase a charge from manslaughter to murder, and quite another to charge a defendant, subsequent to a successful appeal, with a second murder. In the words of Williams [*United States* ex rel. *Williams* v. *McMann* (2d Cir. 1970) 436 F.2d 103, cert. den. 402 U.S. 914 [28 L.Ed.2d 656, 91 S.Ct. 1396]], '*Pearce* [which held that one who had won a reversal of a criminal conviction could be sentenced after retrial and conviction to a stiffer sentence than was meted out in the first trial only if the reasons for the imposition of a stiffer sentence affirmatively appeared in the record and were based on objective information concerning the defendant's identifiable conduct after the original sentencing proceeding] would have application, if a prosecutor . . . charged a defendant whose first conviction had been set aside, with a more serious offense *based upon the same conduct.*' (436 F.2d at 105; (emphasis added). Here, *the heroin counts are based upon acts which are distinct from charges previously brought against appellant. The government's decision to prosecute appellant for counts two and six is well within the traditionally broad ambit of prosecutorial discretion.*" (*Mallah, supra,* 503 F.2d at p. 988; italics added.) ■ Prosecutorial discretion in determining what charges and when to file against a defendant is basic to the framework of the California criminal justice system. (See *People* v. *Andrade* (1978) 86 Cal.App.3d 963 [150 Cal.Rptr. 662]; *People* v. *Adams* (1974) 43 Cal.App.3d 697 [117 Cal.Rptr. 905]; Gov. Code, § 26501.) We refuse, absent logic, reason or higher judicial authority to extend *Blackledge* to interfere with the prosecutor's wide discretion in timing the filing of charges against a defendant with crimes arising out of distinct criminal activity. To do so would unconstitutionally interfere with the executive branch, charged with insuring that the laws of this state in the prosecution of offenses be faithfully executed. (Cal. Const., art. III, § 3; *Younger* v. *Superior Court* (1978) 21 Cal.3d 102 [145 Cal.Rptr. 674, 577 P.2d 1014]; *United States* v. *Cox* (5th Cir. 1965) 342 F.2d 167, cert. den. 381 U.S. 935 [14 L.Ed.2d 700, 85 S.Ct. 1767].)

For each of the foregoing reasons, there was no violation of due process, Lucious' claim of vindictive prosecution is without merit.

## VI—VII*

. . . . . . . . . . . . . . . . . . . . . .

*See footnote 1, *ante,* page 416.

The judgments are in all respects affirmed and remanded for resentencing only.

Brown (Gerald), P. J., and Wiener, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 23, 1984.