[No. F004981. Fifth Dist. July 17, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
ANDREW SEBURN MATTHEWS, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts II and III.

**COUNSEL**

Richard Power, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, W. Scott Thorpe and Clayton S. Tanaka, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**BROWN (G. A.), P. J.**—Andrew Seburn Matthews appeals from a judgment entered on a jury verdict finding him guilty of robbery (Pen. Code, § 211; count one); kidnapping (Pen. Code, § 207 [a lesser included offense of kidnapping for robbery]; count two); and robbery (Pen. Code, § 211; count three). Two deadly weapon use enhancements (Pen. Code, § 12022, subd. (b)) and enhancements for two prior felonies (Pen. Code, § 667, subd. (a)) were found to be true. He received a total sentence of 19 years.

The critical facts are stated in respondent's brief which we substantially utilize.

### FACTS

On the evening of March 22, 1984, Luellen J. Stephen was on duty in her position as a clerk at the Circle K convenience store located in Los Banos, California. At approximately 9:30 p.m., an individual, subsequently identified as appellant, approached the checkout counter, placed a 12-pack of Budweiser beer on the counter and asked Luellen for a carton of Camel unfiltered cigarettes. As Luellen returned with the carton of cigarettes, appellant displayed a handgun (it was subsequently determined that the weapon was actually a BB gun). Appellant demanded all the money. Luellen complied and removed the cash and coins from the cash register. Appellant ordered Luellen to "hurry up" and kept pointing the weapon at Luellen. Appellant ordered Luellen "to give him five minutes." Appellant exited the convenience store with an individual subsequently identified as Ronald Ray McCall. After appellant and McCall departed, Luellen locked the front door of the store and contacted the police authorities.

At approximately 10 p.m., 15-year-old Donovan was at the apartment he shared with his mother, Ella Mae, in Los Banos. Shortly after the robbery, appellant and McCall arrived at the apartment in possession of a 12-pack of beer and a carton of Camel unfiltered cigarettes. The men also possessed cash and a large amount of change. One of the men stated, "Boy, that was easy."

On the evening of March 24, 1984, Frank Moreno was on duty as a taxi driver with the Los Banos City Taxi Company. At approximately midnight, Moreno stopped at Tony's Rendezvous Bar located on I Street in Los Banos. At that location Moreno picked up appellant and McCall. The men directed him to the address of Ella Mae's apartment. No one was at home at the apartment, so appellant and McCall directed Moreno to drive them to the Casa Mobile Trailer Court located on North Mercy Springs in Los Banos.

En route to the trailer park appellant produced a buck knife and placed the point of it at Moreno's neck. Moreno exclaimed, "What's going on? You guys robbing me?" Appellant nodded his head in agreement, and McCall stated, "I'm sorry, but we have to do it." The men directed Moreno to keep driving north and indicated they wanted to go to Stockton. After driving approximately three miles, appellant removed the knife from Moreno's neck and stated, "We're not going to hurt you." At one point, appellant allowed Moreno to handle the knife. After driving approximately five miles, the men removed Moreno's wallet from him (the wallet contained approximately $14). Approximately 15 miles from Los Banos the men ordered Moreno to stop the vehicle and ordered him out of the car at knife point. Moreno exited the vehicle and walked to a farm house where he telephoned his employer. Subsequently Moreno was able to flag down a sheriff's deputy and reported the robbery.

Appellant was arrested in Stockton in the early morning hours of March 24, 1984, riding in the Los Banos taxi. He was in possession of a knife.

DISCUSSION

Part I

*Faretta Error at the Preliminary Examination.*

█ It is conceded by respondent that the municipal court committed *Faretta (Faretta* v. *California* (1975) 422 U.S. 806 [45 L.Ed.2d 562, 95 S.Ct. 2525]) error in denying appellant the right to represent himself at the preliminary examination.

However, our review of the record satisfies us that the error was not raised in the superior court pursuant to a Penal Code section 995 motion to dismiss, so the superior court never had the opportunity to pass upon the municipal court error.

Appellant relies upon an in propria persona motion made in the superior court which stated: "Defendant, Andrew Seburn Matthews, will move for an order of the court for a new preliminary hearing. [¶] On the grounds that, #1—I was denied the right to dismiss counsel, even after showing the municipal court judge in Los Banos that a conflict did in fact exists [*sic*]. #2 Iniffetive [*sic*] assistance of councel [*sic*]: Councel [*sic*] has no intrest [*sic*] in case: ask no questions crutial [*sic*] to case, at pre.lim. #3 Inadequate research."

In the points and authorities submitted in support of the motion by his counsel,[1] appellant cited authorities and argued the motion on the basis that appellant had incompetent counsel at the preliminary examination who, upon his motion at the preliminary examination, should have been replaced by other counsel. He argued that the refusal of the magistrate to replace counsel at the preliminary examination caused appellant's commitment to be illegal and therefore appellant was entitled to a new preliminary examination. No mention was made of the refusal of the magistrate to permit appellant to represent himself or to the *Faretta* case, or to any other case in which the refusal to permit the defendant to represent himself was an issue. Further, the reporter's transcript of the hearing on the motion does not contain any mention whatsoever of appellant's being deprived of the right to represent himself in the municipal court. Accordingly, we conclude that a motion on this ground was not made in the superior court.[2] To conclude otherwise on this record would be the equivalent of manufacturing the existence of such a motion out of thin air. Having not been raised in the superior court, the issue is not cognizable on direct appeal from a judgment of the superior court.

Penal Code section 996 states the general rule regarding defendant's failure to make a Penal Code section 995 motion prior to an appeal: "If the motion to set aside the indictment or information is not made, the defendant is precluded from afterwards taking the objections mentioned in Section 995."

As we stated in *People* v. *Pendergrass* (1986) 182 Cal.App.3d 63 [226 Cal.Rptr. 851]: "We hold the issue [nondisclosure of informant] is not cognizable on direct appeal since this court reviews alleged errors of the superior court, not the municipal court, and the issue is waived where the appellant did not raise in the superior court the failure to disclose the identity of the informant. (*Rugendorf* v. *United States* (1964) 376 U.S. 528 [11 L.Ed.2d 887, 84 S.Ct. 825]; *People* v. *Talley* (1967) 65 Cal.2d 830, 836, fn. 1 [56 Cal.Rptr. 492, 423 P.2d 564]; *Coy* v. *Superior Court* (1959) 51 Cal.2d 471, 473 [334 P.2d 569]; *People* v. *Rodgers* (1976) 54 Cal.App.3d 508, 516-517 [126 Cal.Rptr. 719].) The normal method of raising the denial of the motion by the municipal court is by way of a Penal Code section 995 motion in the superior court. A failure to move to set aside the information

---

[1]After the motion was filed, counsel who represented appellant at the preliminary examination was relieved by the court upon appellant's motion and counsel's concurrence. New counsel was appointed who filed the points and authorities.

[2]Substantiating this view is appellant's remark at the hearing on the multiple in propria persona motions made by appellant in the superior court, "Yes, sir, but I don't feel adequately up on the law to sufficiently represent myself without advisory counsel."

in the superior court bars the defense from questioning on appeal any ruling made at the preliminary hearing. (Pen. Code, § 996; *People* v. *Harris* (1967) 67 Cal.2d 866, 868, 870-871 [64 Cal.Rptr. 313, 434 P.2d 609].)

"Appellant relies upon a statement taken out of context from *Priestly* v. *Superior Court* (1958) 50 Cal.2d 812, 819 [330 P.2d 39]: 'A defendant cannot raise the problem of nondisclosure in the appellate courts when he did not seek disclosure at the trial or preliminary hearing . . .' to support his argument that the denial of the motion to disclose in the municipal court may be raised in the Court of Appeal without having raised the issue in the superior court.

"The statement is loose dicta because in *Priestly* the defendant raised the issue in both the municipal court and superior court—in the former by way of a motion to disclose, and in the latter by way of a motion to suppress. In light of the authority to the contrary and the illogic of concluding otherwise, we do not interpret the statement in *Priestly* as authority for the proposition that the appellate court on direct appeal should review errors committed in the municipal court absent a Penal Code section 995 motion in the superior court." (*Id.*, at pp. 67-68.)

The aforesaid reasoning applies equally to the error of the magistrate in refusing to permit the appellant to represent himself at the preliminary examination.

Accordingly, we need not reach the merits of the issue.

## PARTS II, III*

. . . . . . . . . . . . . . . . . . . . . . . . . . .

## PART IV

*Retaliatory Prosecution.*

Appellant contends that "he was denied due process of law when the prosecutor retaliated by filing more serious charges . . . after a failed plea bargain." He urges the prosecution was guilty of vindictive or retaliatory prosecution.

The complaint contained two counts of robbery (Pen. Code, § 211), one count of kidnapping for robbery (Pen. Code, § 209, subd. (b)), and a count

---

*See footnote, *ante*, page 458.

charging unlawful driving and taking of a vehicle (Veh. Code, § 10851). Each of the four counts was enhanced by use of a deadly weapon, a knife (Pen. Code, § 12022.3, subd. (a)).

Thereafter two informations followed in succession. Each charged only two counts of robbery. (Pen. Code, § 211.) As to the first information, one robbery count was enhanced by an allegation of use of a deadly or dangerous weapon (Pen. Code, § 12022, subd. (b)). In the second information both robbery counts were enhanced by allegations of being armed with a firearm (Pen. Code, § 12022, subd. (a)). As to each information, the preliminary hearing was waived and the matter was referred to the superior court. In each instance the plea bargain failed. After the second failed plea bargain, the superior court remanded the cause to the municipal court for a preliminary examination.

A preliminary examination was held on the original complaint and appellant was held to answer on all counts of the complaint. The third information[6] following the preliminary examination alleged two robberies (Pen. Code, § 211), one kidnapping for robbery (Pen. Code, § 209, subd. (b)), and two prior felonies qualifying under Penal Code section 667, subdivision (a). In the third information one of the robberies remained enhanced by a use of a dangerous and deadly weapon allegation (Pen. Code, § 12022, subd. (b)) and the other was changed to being enhanced by use of a deadly weapon, a firearm (Pen. Code, § 12022.5). The kidnapping for robbery count which was contained in the original complaint was enhanced by a use of a deadly or dangerous weapon allegation (Pen. Code, § 12022, subd. (b)).

▉▉▉ Aside from some changes in the use and arming enhancements, the net result of these multiple changes was to add two Penal Code section 667, subdivision (a), prior felony enhancements that were not in the original complaint. Though appellant does not specifically say so, apparently these two enhancements are the additional charges appellant maintains were vindictively added after the failed plea bargains.

*In re Bower* (1985) 38 Cal.3d 865 [215 Cal.Rptr. 267, 700 P.2d 1269] is the most recent expression of the California Supreme Court on this subject. In *In re Bower,* the petitioner was first tried on second degree murder charges and at a point where the trial was almost completed a mistrial was declared. In the second trial the prosecution increased the charges to first degree murder, and he was convicted of first degree murder. In a habeas corpus

---

[6]Later a fourth amended information was filed making routine correction as to dates, misspellings, and correcting code section designations on the enhancements.

proceeding he successfully argued that there was a presumption of vindictive prosecution when the charges were increased after a mistrial. The prosecution had produced no evidence to overcome the presumption, and the court ordered the conviction reduced from first to second degree.

At page 873, the court in *In re Bower* stated: "The constitutional protection against prosecutorial vindictiveness is based on the fundamental notion that it 'would be patently unconstitutional' to 'chill the assertion of constitutional rights by penalizing those who choose to exercise them.' (*United States* v. *Jackson* (1968) 390 U.S. 570, 581 [20 L.Ed.2d 138, 147, 88 S.Ct. 1209].)"

The *Bower* court reviewed both United States and California precedent on the subject, noting that the decision is based on both the California and United States due process clauses prohibiting charges motivated by prosecutorial vindictiveness. (*Id.,* at p. 880, fn. 8.)

With respect to the circumstances giving rise to a presumption of vindictiveness, the Supreme Court recognized the dichotomy existing in the federal Supreme Court precedent between cases where the additional charges are added after a trial where jeopardy has attached (*Blackledge* v. *Perry* (1974) 417 U.S. 21 [40 L.Ed.2d 628, 94 S.Ct. 2098]; *North Carolina* v. *Pearce* (1969) 395 U.S. 711 [23 L.Ed.2d 656, 89 S.Ct. 2072]) and situations where the new charges are added in a pretrial plea bargain context (*United States* v. *Goodwin* (1982) 457 U.S. 368 [73 L.Ed.2d 74, 102 S.Ct. 2485]; *Bordenkircher* v. *Hayes* (1978) 434 U.S. 357 [54 L.Ed.2d 604, 98 S.Ct. 663], rehg. den. 435 U.S. 918 [55 L.Ed.2d 511, 98 S.Ct. 1477]).

Referring to *Bordenkircher,* the court states: "[T]he *Pearce-Perry* presumption of vindictiveness was held not to arise where charges were increased prior to the attachment of jeopardy." (*In re Bower, supra,* 38 Cal.3d at p. 874.) The court distinguished *Pearce* and *Perry,* quoting from *Bordenkircher*: "'[I]n those cases the Court was dealing with the State's unilateral imposition of a penalty upon a defendant who had chosen to exercise a legal right to attack his original conviction—a situation "very different from the give-and-take negotiation common in plea bargaining between the prosecution and defense . . . ." [Citation.]' (*Id.,* at p. 362 [54 L.Ed.2d at p. 610].) '. . . [I]n the "give-and-take" of plea bargaining, there is no such element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer.' ([*Bordenkircher* v. *Hayes,* 434 U.S.] at p. 363 [54 L.Ed.2d at pp. 610-611].)" (*In re Bower, supra,* 38 Cal.3d at p. 875.)

Again, the court stated, partly quoting from *Goodwin*: "The timing of the prosecutor's action is important because '[a] prosecutor should remain

free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution. An initial decision should not freeze future conduct. [Fn. omitted.] As we made clear in *Bordenkircher,* the initial charges filed by a prosecutor may not reflect the extent to which an individual is legitimately subject to prosecution.' ([*United States* v. *Goodwin,* 457 U.S.] at p. 382 [73 L.Ed.2d at p. 86].)

"The court noted that an important factor in assessing the timing element is the attachment of jeopardy. At the pretrial stage 'the prosecutor's assessment of the proper extent of prosecution may not have fully crystallized. *In contrast, once a trial begins*—and certainly by the time a conviction has been obtained—it is much more likely that the State has discovered and assessed all of the information against an accused and has made a determination, on the basis of that information, of the extent to which he should be prosecuted.' (*Id.,* at p. 381 [73 L.Ed.2d at p. 85], italics added.)" (*In re Bower, supra,* 38 Cal.3d at pp. 875-876.)

The *Bower* court cites the California cases of *People* v. *Rivera* (1981) 127 Cal.App.3d 136, 144 [179 Cal.Rptr. 384], and *People* v. *Farrow* (1982) 133 Cal.App.3d 147, 153 [184 Cal.Rptr. 21], as cases recognizing the federal plea bargain exception for pretrial amendments and emphasizing the importance of timing of the amendments.

*Twiggs* v. *Superior Court* (1983) 34 Cal.3d 360 [194 Cal.Rptr. 152, 667 P.2d 1165] is another recent California Supreme Court case in which, like *Bower,* the charges were increased after a partial trial and a declaration of a mistrial. In *Bower,* the court distinguishes *Twiggs* from those cases where the added charges give rise to a presumption of vindictiveness, stating at page 877: "Additionally, we decided that cases suggesting that the presumption of vindictiveness was inapplicable to pretrial settings were not dispositive of Twiggs' situation—a retrial after a mistrial. Rather, Twiggs' situation was 'analogous to that in the post-conviction context; no new facts were developed through the preliminary hearing or trial, but defendant faces a risk of greater punishment apparently as a result of choosing to face a retrial rather than plead guilty.' ([*Twiggs* v. *Superior Court* (1983) 34 Cal.3d] at pp. 373-374.) As in the cases involving retrial after appeal in *Twiggs* jeopardy had attached. Since the presumption applied, we concluded that the prosecution bore a heavy burden of rebutting with an explanation that adequately dispelled the apprehension of vindictiveness. (*Id.,* at p. 374.)" (*In re Bower, supra,* 38 Cal.3d at p. 877, fn. omitted.)

 In the case at bench the two prior felony charges were added in the normal course of pretrial proceedings pursuant to the authority contained in Penal Code sections 739 and 1009 in the context of failed plea bargains

and after a preliminary examination. Jeopardy had not attached. There had been no trial or partial trial. Thus the timing and circumstances do not give rise to a reasonable likelihood of vindictiveness. Accordingly, adding the two prior felonies did not give rise to a presumption of vindictiveness and the prosecution was not required to present evidence in the first instance tending to show the absence of vindictiveness.

The judgment is affirmed.

Woolpert, J., and Hamlin, J., concurred.