[No. F018460. Fifth Dist. Jan. 20, 1994.]

THE PEOPLE, Plaintiff and Appellant, v.
WILLIAM HENRY BRACEY, Defendant and Respondent.

## COUNSEL

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Michael J. Weinberger and Robert D. Marshall, Deputy Attorneys General, for Plaintiff and Appellant.

Alys Briggs, under appointment by the Court of Appeal, for Defendant and Respondent.

## OPINION

THAXTER, J.—On these facts: a felony probationer, in violation of the terms of probation, commits a new offense; the prosecutor files felony criminal charges for the new offense; while a probation revocation hearing is pending, the prosecutor voluntarily dismisses the new case; after hearing, probation is revoked and reinstated without imposition of a prison commitment; the prosecutor refiles felony criminal charges for the new offense; we hold that a presumption of "vindictive prosecution" does not arise and, absent evidence of actual vindictiveness, the probationer's due process rights have not been violated.

### PROCEDURAL HISTORY

This is a People's appeal from a superior court order dismissing the instant prosecution in furtherance of justice. (Pen. Code,[1] § 1385, subd. (a).[2])

On February 14, 1991, defendant and respondent William Henry Bracey, having pleaded guilty to a violation of Health and Safety Code section 11350 in Kern County case No. 43718A, was placed on three years' probation, including nine months of jail time. Among the stated probation conditions were that Bracey "refrain from further violations of the law" and that he "refrain from the use and possession of, nor have under his/her control, any narcotic, restricted dangerous drug, marijuana, or hallucinogenic drug . . . ."

On November 30, 1991, Bracey was arrested for allegedly selling rock cocaine to an undercover police officer. He was charged with violating Health and Safety Code section 11352 and, after a preliminary hearing, was held to answer in superior court case No. 48339A. He pleaded not guilty on December 30, 1991, and the case was set for jury trial on February 10, 1992. Bracey was notified that the new offense would be used as a basis for revoking his probation in case No. 43718A.

At the time set for jury trial on the new case, Deputy District Attorney Craig Smith moved to dismiss and the court granted the motion. A formal

---

[1]All statutory references are to the Penal Code unless otherwise indicated.

[2]Section 1385, subdivision (a), provides: "The judge or magistrate may, either of his or her own motion or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed. The reasons for the dismissal must be set forth in an order entered upon the minutes. No dismissal shall be made for any cause which would be ground of demurrer to the accusatory pleading."

probation revocation hearing was set in the earlier case and was eventually held on March 11, 1992. Both the undercover officer and Bracey testified. After hearing the evidence, the court ordered probation revoked and reinstated on the condition that Bracey serve one year in jail, less one hundred fifty-three days of credits. Smith, representing the People, unsuccessfully urged the court to impose a state prison sentence.

The following day, March 12, 1992, Smith refiled the Health and Safety Code section 11352 charge against Bracey.[3] Bracey was ultimately held to answer in superior court on that charge in the instant case. On June 19, 1992, Bracey filed a notice of motion to dismiss or, in the alternative, a request to consider dismissal on the court's own motion.[4] Opposition was filed.

On July 2, the court held a hearing on Bracey's motion. After first ruling that it could not grant Bracey's motion to dismiss, the court stated it would consider his request to dismiss on its own motion under section 1385. The court reviewed the procedural history of the case and then asked the prosecutor to "enlighten the Court in this particular situation as to what the basis was for dismissing the case and then filing the case the day after the revocation proceeding." The prosecutor presented the testimony of Deputy District Attorney Smith.

Smith explained that his position with the district attorney's office was funded by a federal grant entitled "The Kern Anti Drug Abuse Project." One of his tasks, as specifically required by the grant, "is to put people who are on felony probation in state prison, that's stated explicitly in the grant, if they are within the target offenders designated by the grant." Those "target offenders" are "offenders who are on felony probation for a drug offense, like [Health and Safety Code sections] 11350, 11351, 11352, who commit another felony or another misdemeanor."

Smith testified that "The Kern Anti Drug Abuse Project" policies require, when a probation revocation hearing is pending, that prosecution on the secondary offense be dismissed.

"The Kern Anti Drug Abuse Project, it requires that I dismiss the case if it has been filed. If it has not been filed and the law enforcement department who have arrested the person wishes it to be filed, I reject it so that it is never filed.

---

[3]The refiling was authorized by section 1387. (See *Crockett* v. *Superior Court* (1975) 14 Cal.3d 433 [121 Cal.Rptr. 457, 535 P.2d 321].) Respondent does not contend otherwise.

[4]While section 1385 does not provide for a defense motion to dismiss in the interests of justice, case law permits a defendant to "request" that a court exercise its own power to so move under this section. (See, e.g., *People* v. *Brooks* (1980) 26 Cal.3d 471, 475, fn. 2 [162 Cal.Rptr. 177, 605 P.2d 1306].)

"Once that has happened, either dismissing the case or not filing the case, I then ask the probation department to revoke their probation based upon a declaration letter."

The goal of this policy is the imprisonment of repeat offenders through the probation revocation process, rather than via the more expensive route of a new criminal proceeding.

"The whole objective of this grant is to do away with a great majority of cases that would have gone through arraignment, preliminary hearing, arraignment in superior court, motions, readiness, and jury trial, that's what this whole objective is, and yet still have the person go to prison."

In furtherance of this goal, Smith had processed around 1,000 probation revocations over the past year. Of those cases, "fifteen or twenty times" the court hearing the revocation proceeding failed to impose prison time. In only one instance when the revocation hearing did not result in imprisonment did Smith choose not to file new criminal charges based on the conduct leading to the revocation hearing.[5]

In Bracey's case, Smith dismissed the original charge in accordance with "The Kern Anti Drug Abuse Program" policy. No promises or plea bargains were offered to Bracey in exchange for the dismissal. Smith testified that following the probation revocation hearing, he refiled for several reasons.

"In this case it was multitude of reasons, the first being that, according to the objectives of my project, he was not given prison; number two, that the new offense that he committed was a violation of Health and Safety Code 11352, which is sales of cocaine, which carries a term of, upper term of, four years. Not only that if Mr. Bracey reoffends in the future and he's convicted of Health and Safety Code 11352, that's a three year enhancement; number three, this was a very solid case.

"There was no evidentiary problems involved in the case whatsoever from my viewpoint from my handling of the case. And I spoke to the witness that testified in the case, and I saw him testify before Judge Kelly [at the revocation hearing] and I felt there were no problems in the case. Therefore, filing the case and taking it to trial would not be a problem especially because I only called one witness, and I think there were other witnesses that could have helped the case, but given the fact that it's preponderance burden of proof, I didn't feel that that was warranted in the revocation proceedings. Those were a couple of reasons.

---

[5]In that case, probation was not revoked at all, the court finding insufficient evidence of a violation.

"The other reason is that I spoke to the probation officer who was in charge of supervision of Mr. Bracey, and he felt that the new charge should be filed and that was because Mr. Bracey has—was given a long sentence originally and once he was revoked and given a year, that ate up a great deal of his time, i.e. the most he could get was three years.

"If he was sentenced to one year originally and then he was sentenced to another year on the revocation, he only has a one year window. Therefore, on the worst case scenario, if I refiled and he gets local time again on that new case, he's only eaten up one year. And so it's out of my hands right now, out of my project's hands what happens to Mr. Bracey on the new case. However, if he reoffends and is found in violation of Health and Safety Code 11352, then that's a four year upper term. And so based upon all that I felt justified in refiling the case."

Smith also testified that the dismissal had been a "mistake" because it was not until the probation revocation hearing date that he realized the new case involved a sale directly to an undercover officer rather than mere possession.

After taking the matter under submission, the court issued an order dismissing the case. Section 1385 directs that "[t]he reasons for the dismissal must be set forth in an order entered upon the minutes." Consequently, the court explained its reasoning in dismissing the action as follows:

"e. The court finds that California Penal Code § 1385 [*sic*] and § 999 permit the filing of a second Complaint after a prior dismissal of a Complaint based upon the same alleged circumstances. The right of the prosecution to refile is conditional upon the defendant's constitutional right to due process being carefully adhered to.

"f. This court finds that the filing of the charges on March 12, 1992, the day after the prosecution was unsuccessful in having the defendant sentenced to State prison at the revocation hearing, was an act of vindictive prosecution. A defendant shall be free from the fear of retaliatory motivation which may deter a defendant who is subjected to a probation revocation proceeding. In the present case the defendant was denied due process which is the basis of the court's ruling to dismiss case number 50216."

DISCUSSION

I. *Standard of review*

While a trial court has broad discretion to dismiss under section 1385, the power is not absolute. It is limited by the amorphous concept that

the dismissal be "in furtherance of justice," which requires consideration of the constitutional rights of the defendant and the interests of society represented by the People. (*People* v. *Orin* (1975) 13 Cal.3d 937, 945-947 [120 Cal.Rptr. 65, 533 P.2d 193].) A dismissal not in furtherance of justice is an abuse of discretion requiring reversal. (*People* v. *Ferguson* (1990) 218 Cal.App.3d 1173, 1180-1183 [267 Cal.Rptr. 528].)

■ As previously noted, section 1385 mandates that the lower court, in dismissing under that section, enter a statement of reasons in the minutes.

In *People* v. *Beasley* (1970) 5 Cal.App.3d 617, 637 [85 Cal.Rptr. 501], the First Appellate District stated that "[o]ne of the purposes of the specification of reasons is to enable an appellate court to determine whether, in view of the reasons assigned to justify a section 1385 dismissal, a proper exercise of discretion is shown." In *People* v. *Ritchie* (1971) 17 Cal.App.3d 1098, 1105 [95 Cal.Rptr. 462], the Second District noted that the "main purpose [of the required specification of reasons] is to restrain judicial discretion and curb arbitrary action for undisclosed reasons and motives." ■ In *People* v. *Superior Court* (1971) 20 Cal.App.3d 684 [97 Cal.Rptr. 886], the Second District held that "[i]n light of that statutory language [requiring a statement of reasons], the terms of the minute order control in our examination of the validity of the order of dismissal." (*Id.* at p. 686, fn. 3.) In *People* v. *Rawlings* (1974) 42 Cal.App.3d 952, 957 [117 Cal.Rptr. 651], the Second District held that "[i]n determining whether the dismissal should be set aside we look to the reasons for the order which were entered in the minutes. . . . Stated another way, on the state of the record was the trial judge in error in dismissing the case for the reasons stated?"[6] And in *People* v. *Harris* (1976) 62 Cal.App.3d 859, 861 [133 Cal.Rptr. 352], the Second District noted that the very purpose for the statement of reasons requirement was "to permit a review of the correctness of the order."

In *People* v. *Gwillim* (1990) 223 Cal.App.3d 1254, 1265 [274 Cal.Rptr. 415], the Sixth Appellate District, in reviewing a section 1385 dismissal, apparently adopted a different standard of review, choosing to "consider whether reasons other than that articulated by the trial court support its order of dismissal." The only authority cited by the *Gwillim* court for considering grounds not expressly relied upon by the trial court was *People* v. *Gibson* (1987) 195 Cal.App.3d 841, 853 [241 Cal.Rptr. 126].

In our opinion, *Gibson*, which was decided by this court, is inapplicable to the issue posed in *Gwillim* and this case and does not justify consideration of

---

[6]*Rawlings* has been criticized on another point; see, e.g., *People* v. *Yarbrough* (1991) 227 Cal.App.3d 1650, 1654 [278 Cal.Rptr. 703].

grounds outside the trial court's statement of reasons. The order under review in *Gibson* was an order denying a motion to quash a subpoena. The motion was based on alleged noncompliance with statutory requirements. The trial court found compliance. On appeal the respondent conceded there was a technical violation of the statutory procedural requirement but urged a new, different ground for affirming the court's order, namely, that Proposition 8 (Cal. Const., art. I, § 28) abrogated the statutory exclusionary provision. This court considered the new ground, found it dispositive, and therefore affirmed. (195 Cal.App.3d at pp. 850-852.)

The lower court's order denying the motion to quash in *Gibson* raised a purely legal question. ■ On review it was appropriate for this court to follow "the general rule that: 'If the *decision* of the lower court is right, the judgment or order will be affirmed regardless of the correctness of the grounds upon which the court reached its conclusion. . . .' (9 Witkin, Cal. Procedure (3d ed. 1985) § 259, p. 266.)" (*People* v. *Gibson, supra,* 195 Cal.App.3d at p. 853.) ■ Here, however, we are dealing not with a pure question of law but with the exercise of a trial court's discretion. It would be incongruous for an appellate court, reviewing such order, to rely on reasons not cited by the trial court. Otherwise, we might uphold a discretionary order on grounds never considered by, or, worse yet, rejected by the trial court. And, if the appellate court is free to scour the record for other reasons to support the dismissal, or accept reasons suggested by the defendant,[7] there was no reason for the Legislature to require that the lower court record the basis for the dismissal in the first instance.

We conclude that our review of the order of dismissal under section 1385 is limited to the reasons stated by the trial court. To the extent *People* v. *Gwillim, supra,* 223 Cal.App.3d 1254 may hold to the contrary, we decline to follow it.

As previously noted, the court's stated reason was that the refiling of charges was "an act of vindictive prosecution. A defendant shall be free from the fear of retaliatory motivation which may deter a defendant who is subjected to a probation revocation proceeding. In the present case the defendant was denied due process . . . ."

II. *"Vindictive prosecution" as a denial of due process*

■ The concept that action amounting to vindictive prosecution can be a denial of due process seems to have its roots in a line of cases decided by the United States Supreme Court starting with *North Carolina* v. *Pearce* (1969)

---

[7]In this case respondent has not suggested any reasons not stated in the dismissal order.

395 U.S. 711 [23 L.Ed.2d 656, 89 S.Ct. 2072]. *Pearce* held due process requires that "vindictiveness [by a judicial officer] against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial." (*Id.* at p. 725 [23 L.Ed.2d at pp. 669].)

The concept was extended to conduct of the prosecutor in *Blackledge* v. *Perry* (1974) 417 U.S. 21 [40 L.Ed.2d 628, 94 S.Ct. 2098]. In *Perry*, the defendant was originally charged with and convicted of a misdemeanor. He exercised his absolute right under state law to a trial de novo in a court of general jurisdiction, thereby annulling the prior conviction. Before retrial, the prosecutor obtained an indictment charging the defendant with a felony based on the same facts for which he had been tried and convicted of a misdemeanor. After he was convicted of a felony in the retrial, the defendant sought and obtained relief by writ of habeas corpus. On certiorari, the Supreme Court held that "it was not constitutionally permissible for the State to respond to Perry's invocation of his statutory right to appeal by bringing a more serious charge against him prior to the trial *de novo*." (*Id.* at pp. 28-29 [40 L.Ed.2d at p. 635], fn. omitted.)

*Pearce* and *Perry* dealt with *postconviction* action by the state in response to the defendant's exercise of statutory rights. The central notion underlying the rule of those cases is that a person who has suffered a conviction should be free to exercise his right to appeal, or seek a trial de novo, without apprehension that the state will retaliate by "upping the ante" with more serious charges or a potentially greater sentence. (*Blackledge* v. *Perry, supra,* 417 U.S. at pp. 27-28 [40 L.Ed.2d at p. 634].)

In *United States* v. *Goodwin* (1982) 457 U.S. 368 [73 L.Ed.2d 74, 102 S.Ct. 2485], the Supreme Court expounded further on the concept:

"To punish a person because he has done what the law plainly allows him to do is a due process violation 'of the most basic sort.' *Bordenkircher* v. *Hayes,* 434 U.S. 357, 363 [54 L.Ed.2d 604, 610-611, 98 S.Ct. 663]. In a series of cases beginning with *North Carolina* v. *Pearce* and culminating in *Bordenkircher* v. *Hayes,* the Court has recognized this basic—and itself uncontroversial—principle. For while an individual certainly may be penalized for violating the law, he just as certainly may not be punished for exercising a protected statutory or constitutional right.

"The imposition of punishment is the very purpose of virtually all criminal proceedings. The presence of a punitive motivation, therefore, does not provide an adequate basis for distinguishing governmental action that is fully

justified as a legitimate response to perceived criminal conduct from governmental action that is an impermissible response to non-criminal, protected activity. . . ." (457 U.S. at pp. 372-373 [73 L.Ed.2d at p. 80], fn. omitted.)

III. *The presumption of vindictiveness*

In *Goodwin* the Supreme Court noted that it had applied a *presumption* of vindictiveness in *Pearce* and *Perry*, but concluded that a presumption was unwarranted in a pretrial setting where the prosecution, following the defendant's election to proceed to jury trial on pending misdemeanor charges, obtained a new indictment charging more serious offenses. While a defendant's exercise of some pretrial procedural right may present an opportunity for vindictiveness, "a mere opportunity for vindictiveness is insufficient to justify the imposition of a prophylactic rule." (*United States* v. *Goodwin, supra*, 457 U.S. at p. 384 [73 L.Ed.2d at p. 87].)

California courts have followed the Supreme Court in refusing to apply a presumption of vindictiveness for prosecutorial action before commencement of trial. (See *People* v. *Rivera* (1981) 127 Cal.App.3d 136 [179 Cal.Rptr. 384]; *People* v. *Farrow* (1982) 133 Cal.App.3d 147 [184 Cal.Rptr. 21]; *People* v. *Tirado* (1984) 151 Cal.App.3d 341 [198 Cal.Rptr. 682]; *People* v. *Lucious* (1984) 153 Cal.App.3d 416 [200 Cal.Rptr. 251]; *People* v. *Matthews* (1986) 183 Cal.App.3d 458 [228 Cal.Rptr. 316]; *People* v. *Hudson* (1989) 210 Cal.App.3d 784 [258 Cal.Rptr. 563]; *People* v. *Johnson* (1991) 233 Cal.App.3d 425 [284 Cal.Rptr. 579].)

In *Twiggs* v. *Superior Court* (1983) 34 Cal.3d 360 [194 Cal.Rptr. 152, 667 P.2d 1165] and *In re Bower* (1985) 38 Cal.3d 865 [215 Cal.Rptr. 267, 700 P.2d 1269], our state's highest court applied the presumption of vindictiveness when the prosecution "upped the ante" by seeking conviction on more serious charges after an original trial ended in mistrial. In *Twiggs* the mistrial resulted from a hung jury. In *Bower* the defendant moved for mistrial after a prosecution witness informed the jury of the defendant's parole status. The *Bower* court explained its reasons for indulging the presumption of vindictiveness:

"In the present case, petitioner was charged with a more severe crime after he moved for a mistrial, which was necessary to insure the fairness of the proceedings against him. Jeopardy had attached. The prosecutor offered no new facts but, as in Twiggs, relied upon facts available at the time of the first trial. At the time petitioner requested the mistrial, the prosecutor was examining his last witness in the case. Because of the time and effort invested in the first proceeding in this case, as in *Twiggs*, the prosecution had

'a great interest in discouraging defendant's assertion of a retrial.' (*Twiggs* v. *Superior Court, supra,* 34 Cal.3d at p. 369.)

"These circumstances present a reasonable likelihood of vindictiveness. The prosecution has an obvious institutional interest in avoiding the duplication of effort and increased expenditure of resources attendant on the retrial of such a case. The presumption of vindictiveness protects against the danger that such institutional pressures might subconsciously motivate a vindictive prosecutorial response to a defendant's motion for mistrial made at this late stage of the proceedings. [Citations.] The presumption also aims to free the defendant of the apprehension that the exercise of a right designed to guarantee that his or her trial is fair will be met with a retaliatory increase in the charge and potential period of incarceration to which he or she is subjected. [Citation.] Regardless of the actual motive of the individual prosecutor, a judicial process which permitted the prosecution to increase the charges against a defendant who successfully exercised a constitutional or procedural right at trial would have a chilling effect upon the assertion of those rights and could undermine the integrity of the entire proceeding." (38 Cal.3d at pp. 877-878.)

The court went on to characterize the presumption as a legal presumption which is overcome only when the prosecution can demonstrate "that (1) the increase in charge was justified by some objective change in circumstances or in the state of the evidence which legitimately influenced the charging process and (2) that the new information could not reasonably have been discovered at the time the prosecution exercised its discretion to bring the original charge." (*In re Bower, supra,* 38 Cal.3d at p. 879.)

The other two reported California cases which applied a presumption of vindictiveness did so in situations where jeopardy had already attached before the prosecution "upped the ante." (*Barajas* v. *Superior Court* (1983) 149 Cal.App.3d 30 [196 Cal.Rptr. 599] [charges increased following mistrial]; *Robinson* v. *Superior Court* (1986) 181 Cal.App.3d 746 [226 Cal.Rptr. 724] [additional charges filed after defendant's motion for new trial granted; presumption overcome].)

■ In this case it appears the court below applied the presumption of prosecutorial vindictiveness. By bringing the motion itself, the court implicitly made a prima facie finding that dismissal would be in furtherance of justice. When it conducted the hearing, the court did not place any burden on respondent but, instead, turned to the prosecutor to present evidence opposing the motion. ■ The prosecution, however, has a burden to explain the reasons for its exercise of prosecutorial discretion only when there is a

reasonable likelihood of vindictiveness; i.e., when the presumption applies. (See *People* v. *Farrow, supra*, 133 Cal.App.3d at p. 153; *People* v. *Matthews, supra*, 183 Cal.App.3d at p. 467.)

 The court's ultimate ruling suggests the court concluded that the People failed to overcome a presumption. Thus, we must inquire whether the court properly applied the presumption on these facts.

## IV. *The presumption does not apply here*

So far as we are aware, no reported decision has dealt with a claim of prosecutorial vindictiveness in the factual scenario presented here—refiling dismissed charges based on facts underlying a completed probation revocation hearing. For reasons which we will discuss, we believe the court abused its discretion in presuming that the prosecutor acted vindictively in refiling the charges.

First, we note that the common thread running through the cases which have found a due process violation based on prosecutorial vindictiveness is not readily apparent in the factual fabric of this case. In those cases the defendant affirmatively exercised some defined constitutional or statutory right, such as the right to a trial de novo (*Blackledge* v. *Perry, supra*, 417 U.S. 21), the right to a retrial following a mistrial (*Twiggs* v. *Superior Court, supra*, 34 Cal.3d 360; *In re Bower, supra*, 38 Cal.3d 865; *Barajas* v. *Superior Court, supra*, 149 Cal.App.3d 30), or the right to move for new trial (*Robinson* v. *Superior Court, supra*, 181 Cal.App.3d 746). Even in some cases which did not apply the presumption, the right exercised by the defendant was clearly identifiable. (*People* v. *Lucious, supra*, 153 Cal.App.3d 416 [right to discovery]; *People* v. *Hudson, supra*, 210 Cal.App.3d 784 [right to move for withdrawal of guilty plea]; *People* v. *Johnson, supra*, 233 Cal.App.3d 425 [right to move for severance of trials].)

Here it is not clear what right respondent exercised which might have caused vindictive retaliation by the prosecutor. While respondent had a right to a probation revocation hearing (*People* v. *Vickers* (1972) 8 Cal.3d 451 [105 Cal.Rptr. 305, 503 P.2d 1313]), there is no indication he needed to "exercise" the right. As far as the record shows, the hearing was routinely set and conducted, and respondent was never asked to forego the hearing. Even if we infer that the respondent rejected some prehearing offer by the prosecutor and stood on his right to a hearing, the presumption of vindictiveness would not arise. The courts have consistently refused to apply the presumption in the context of failed pretrial plea bargains. (See *Bordenkircher* v. *Hayes* (1978) 434 U.S. 357 [54 L.Ed.2d 604, 98 S.Ct. 663];

*United States* v. *Goodwin, supra,* 457 U.S. 368; *People* v. *Rivera, supra,* 127 Cal.App.3d 136; *People* v. *Tirado, supra,* 151 Cal.App.3d 341; *People* v. *Matthews, supra,* 183 Cal.App.3d 458.)

Second, the prosecutor did not "up the ante" by filing more serious charges than those originally filed. Both the original information and the second one, filed after the first was dismissed, charged a single count of violating Health and Safety Code section 11352. While it is true the original proceeding had been dismissed and no criminal charges were pending against defendant when the probation revocation hearing was held, the prosecution had a clearly recognized right to refile, and respondent had no "right" to expect otherwise. In this regard, we see no meaningful difference between this case and one in which criminal charges are pending at the time of the revocation hearing and are later pursued, or one in which no criminal charges are filed until after the revocation hearing. The opportunity for vindictive retaliation is present in each of the situations, but this "is insufficient to justify the imposition of a prophylactic rule." (*United States* v. *Goodwin, supra,* 457 U.S. at p. 384 [73 L.Ed.2d at p. 87].)

There is even less reason to apply a presumption of vindictiveness here than there was in *People* v. *Farrow, supra,* 133 Cal.App.3d 147. There the defendant was originally charged with one count of possession of a firearm by a convicted felon. He successfully moved for dismissal because the case was not brought to trial within 60 days. The prosecutor then refiled, adding a second count alleging assault with a deadly weapon. The defendant's motion to dismiss the second count was denied, and he was convicted on both counts. On appeal the court refused to apply a presumption of vindictive prosecution. The court said:

"Unless the *Perry* rule is limited to the postconviction appeal context, it becomes totally unworkable. Prosecutorial discretion in determining the charges to be filed is basic to the framework of our criminal justice system. [Citations.] Up to the time of verdict, the prosecution may amend the information to include additional offenses shown by the evidence at the preliminary hearing. To extend *Perry* to the pretrial and trial context would unduly hamper the legitimate exercise of this prosecutorial discretion. From the very commencement of proceedings, a criminal defendant has innumerable 'rights' which are exercised prior to and during the trial. *Whenever* the prosecution attempted to amend the information, the defendant could assert that the amendment was really in retaliation for some right that the defendant had theretofore exercised, or attempted to exercise. If the assertion of such a claim required the prosecution to come forward with explanations of the motivations for exercise of its discretion to amend the charges, the defendant

could delay the proceedings and deflect them from the true issue, the defendant's guilt or innocence.

". . . In the absence of a showing by appellant of an actual vindictive and discriminatory prosecution, the mere fact that a section 1382 dismissal preceded the filing of the additional charge does not show a violation of due process enabling appellant to avoid prosecution, conviction and punishment for the assault." (133 Cal.App.3d at pp. 152-153, fn. omitted.)

Finally, by presuming vindictiveness under the circumstances of this case the trial court failed to recognize the separateness of the probation revocation proceeding and the new criminal proceeding. ■ Probation revocation proceedings and criminal proceedings based on the same conduct follow separate procedural tracks. They may be pursued in separate courts or even different counties. The revocation hearing may precede the criminal trial or vice versa. (See, generally, Cal. Criminal Law Procedure and Practice (Cont.Ed.Bar 1986) §§ 45.10, 45.15, 45.16, pp. 997-1000.) If the revocation hearing is held first, the probationer's testimony at that hearing is inadmissible at the later criminal trial. (*People* v. *Coleman* (1975) 13 Cal.3d 867 [120 Cal.Rptr. 384, 533 P.2d 1024].) ■ The standard of proof required for finding a probation violation is a simple preponderance of evidence. (*People* v. *Rodriguez* (1990) 51 Cal.3d 437 [272 Cal.Rptr. 613, 795 P.2d 783].)

■ In *Lucido* v. *Superior Court* (1990) 51 Cal.3d 335 [272 Cal.Rptr. 767, 795 P.2d 1223, 2 A.L.R.5th 995], our Supreme Court held that relitigation, in criminal trials, of issues determined in prior probation revocation hearings, is not barred by the doctrine of collateral estoppel. Examining the issue in light of the public policy that the integrity of the judicial system be preserved, the court noted:

"Probation revocation hearings and criminal trials serve different public interests, and different concerns may shape the People's pursuit of revocation and conviction. (See, e.g., *Gagnon* v. *Scarpelli* [(1973) 411 U.S. 778] at pp. 788-789 [] ['there are critical differences between criminal trials and probation or parole revocation hearings, and both society and the probationer or parolee have stakes in preserving these differences']; *United States* v. *Miller* [(6th Cir. 1986) 797 F.2d 336] at p. 342 ['The government is not required to complete its entire investigation before seeking to revoke an individual's probation, nor would such a requirement be in society's best interest.'].). . . .

"A probation revocation hearing assesses whether conditions relating to punishment for a prior crime have been violated so that probation should be

modified or revoked; a criminal prosecution seeks conviction for wholly new offenses. [Citation.] If the People prevail at the hearing, the result is not a new felony conviction . . . . Rather, if they prevail, the court's discretion is limited to modifying a previously imposed sentence or imposing a new sentence for an earlier conviction. [Citations.] A revocation hearing arises as a continuing consequence of the probationer's original conviction; any sanction imposed at the hearing follows from that crime, not from the substance of new criminal allegations against the probationer. Indeed, because the hearing—despite its obvious importance to both probationer and People—neither threatens the probationer with the stigma of a new conviction nor with punishment other than that to which he was already exposed as a result of his earlier offense, *it does not place the probationer in jeopardy.* [Citations.]" (51 Cal.3d at pp. 347-348, italics added.)

 Invoking a presumption of vindictiveness in situations like those of this case is contrary to the rationale of *Lucido* because it may effectively bar criminal prosecution based upon the result of the revocation hearing. In our view, doing so would be an improper judicial interference "with the executive branch, charged with insuring that the laws of this state in the prosecution of offenses be faithfully executed. (Cal. Const., art. III, § 3; *Younger* v. *Superior Court* (1978) 21 Cal.3d 102 [ ]; *United States* v. *Cox* (5th Cir. 1965) 342 F.2d 167, cert. den. *Cox* v. *Hauberg* (1965) 381 U.S. 935 [ ].)" (*People* v. *Tirado, supra,* 151 Cal.App.3d at pp. 352-353.)

As the United States Supreme Court said in *United States* v. *Goodwin, supra*: "A prosecutor should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution. An initial decision should not freeze future conduct." (457 U.S. at p. 382 [73 L.Ed.2d at p. 86], fn. omitted.)

V. *There was no evidence of vindictive prosecution*

 Absent a presumption, a denial of due process on grounds of prosecutorial vindictiveness requires objective evidence "that the prosecutor's charging decision was motivated by a desire to punish [the defendant] for doing something that the law plainly allowed him to do." (*United States* v. *Goodwin, supra,* 457 U.S. at p. 384 [73 L.Ed.2d at p. 87], fn. omitted.) "The charge of vindictive prosecution is not a substitute for evidence." (*People* v. *Tirado, supra,* 151 Cal.App.3d at p. 350.)

We see no evidence in the record supporting the court's conclusion that respondent was denied due process when the criminal charges were refiled. Craig Smith's testimony was uncontradicted. The prosecution consistently

considered that respondent's alleged violation of Health and Safety Code section 11352, coupled with his prior record, called for a prison commitment. Smith gave two, somewhat inconsistent reasons for the dismissal. He claimed both that the dismissal was mandated by the federal grant and that he "mistakenly" dismissed believing the new charges involved only simple possession. In either case, however, the refiling was a response to respondent's criminal activity, not his assertion of any constitutional or statutory right.

Because the record does not support the conclusion that respondent had been denied due process, dismissal was an abuse of discretion.

## DISPOSITION

The judgment (order of dismissal) is reversed.

Stone (W. A.), Acting P. J., and Dibiaso, J., concurred.

A petition for a rehearing was denied February 18, 1994, and respondent's petition for review by the Supreme Court was denied April 27, 1994.